Thomas R. Califano
Kerry Ford Cunningham
Vincent J. Roldan
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

*Counsel for GECMC 2007 C-1 Burnett Street, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :      Chapter 11
                                                    :
HOTI ENTERPRISES, LP,                               :      Case No. 10-24129 (RDD)
                                                    :
                          Debtor.                   :
---------------------------------------------------------------x

**MOTION OF GECMC 2007 C-1 BURNETT STREET, LLC, FOR AN ORDER EXCUSING COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE OR, ALTERNATIVELY, CONVERTING THIS CASE TO A CASE UNDER CHAPTER 7**

GECMC 2007 C-1 Burnett Street, LLC ("GECMC"), the holder of a first mortgage on the sole asset of Hoti Enterprises, LP (the "Debtor"), certain real property in Brooklyn, New York, by and through its counsel, hereby moves this Court for the entry of an order (i) excusing compliance by a court-appointed receiver with § 543 of title 11 of the United States Code (the "Bankruptcy Code") pursuant to 11 U.S.C. §§ 543(d)(1) or, alternatively, (ii) converting this case to a case under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. §§ 105(a) and 1112(b) (the "543 Motion"). In support of the 543 Motion, GECMC respectfully states as follows:

**PRELIMINARY STATEMENT**

Barbara S. Odwak, Esq. was appointed as receiver in connection with a pending state court foreclosure action to control and maintain certain of the Debtor's real Property (as defined below). The receiver has maintained and operated the Property in a manner consistent with her

obligations and currently holds $888,108.17 in rents from the Property.  GECMC has discovered that prior to the receiver's appointment, the Debtor acted in disregard for the interests of its creditors by mismanaging the Property for the benefit of the Debtor's principal.  The Debtor defaulted under the Note and Mortgage, paid excessive "management fees" to an affiliated company, entered into leases in the names of an affiliate, and violated the terms of the receivership order by failing to turn over rents and security deposits.  The Debtor simply cannot be trusted to fulfill its duties as a debtor in possession.  Accordingly, GECMC asks that this Court grant its motion to excuse compliance with the turnover requirements of Bankruptcy Code § 543(b) and to allow the receiver to remain in place.  Alternatively, GECMC requests that the Court convert this case to a case under Chapter 7.

## JURISDICTION

1.On October 12, 2010 (the "Petition Date"), the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.  It is GECMC's understanding that Debtor filed its petition to delay a foreclosure action which was filed in New York Supreme Court in February 2009.

2.This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York.  Consideration of this matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3.Venue of the Debtor's chapter 11 case and this 543 Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.The statutory predicates for the relief sought are 11 U.S.C. §§ 105(a), 543(d)(1) and 1104(a).

## BACKGROUND

5. The Debtor is a closely held limited liability partnership which owns and operates a residential apartment complex located at 2801 Fillmore Avenue, 3001 Avenue R and 2719 Fillmore Avenue, Brooklyn, New York with 144 apartments and 50 garage spaces (the "Property"). Affidavit of Victor Dedvukaj sworn to October 12, 2010 submitted in support of Debtor's bankruptcy petition ("Dedvukaj Aff."), at ¶ 2.

6. Debtor's limited partners are all family members. Dedvukaj Aff., at ¶ 2. Debtor is owned by Victor Dedvukaj (10%), Gjelosh Dedvukaj (27.25%), Marash Dedvukaj (24.5%), Violeta Dedvukaj (14.5%), Maruka Dedvukaj (22.75%) and Hoti Realty Management Co., Inc. ("Hoti Management"), Debtor's General Partner (1%). Dedvukaj Aff., Ex. F. Hoti Management also filed a petition in bankruptcy on October 12, 2010 (Case No. 10-24130). Dedvukaj Aff., at ¶ 9.

7. Pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated February 15, 2007 (the "Mortgage"), between Debtor and Deutsche Bank Mortgage Capital, L.L.C., Debtor pledged the Property as collateral to secure, among other things, payments due under an Amended, Restated and Consolidated Promissory Note in the principal sum of $31,000,000 (the "Note"). Dedvukaj Aff., at ¶ 2; Affidavit of Kerry Ford Cunningham dated October 20, 2010 in support of the 543 Motion ("Cunningham Aff."), Ex. A. The Mortgage was duly recorded in the Office of the Register of the City of New York, Kings County on March 1, 2007 at CRFN 2007000112921, and constitutes a valid and enforceable first priority lien on the Property. Id. at ¶ 2; Cunningham Aff., Ex B.

8. The Mortgage was assigned to GECMC by Assignment of Mortgage dated February 6, 2009, and duly recorded in the Register's Office on February 23, 2009 at CRFN 2009000051863. Cunningham Aff., Ex. C.

9. The Mortgage assigns to GECMC all rents, royalties, issues, profits, bonus money, revenue, income rights and other benefits from the Property from time to time accruing (collectively, the "Rents" and together with the Property the "Collateral"). Cunningham Aff., Ex. B at ¶ 6.

10. Additionally, Debtor executed and delivered an Assignment of Leases and Rents dated February 15, 2007, (referenced at section 6.1 of the Mortgage) which was duly recorded in the Office of the Register of the City of New York Kings County on March 1, 2007 at CRFN 2007000112922, and was subsequently assigned to GECMC by assignment dated February 6, 2009 and recorded on February 23, 2009 at CRFN 2009000051864 (collectively the "Assignment of Rents"). Cunningham Aff., Ex. D.

11. Debtor defaulted under the Note and Mortgage by failing to make the monthly debt service installment payments due on November 1, 2008, December 1, 2008, January 1, 2009 and February 1, 2009. Cunningham Aff., Ex. E at ¶ 10.

12. As of November 11, 2009, GECMC was due $38,283,942.22, exclusive of attorneys' fees. Dedvukaj Aff., Ex. C, n. 5.

13. On or about February 27, 2009, GECMC commenced an action to foreclose the Mortgage entitled GECMC 2007-C1 Burnett Street. LLC v. Hoti Enters. L.P., et al., (N.Y. Supreme Court, Kings County, Index No. 5006/2009) (the "Foreclosure Action"). Cunningham, Aff., Ex. E. By Order dated March 16, 2009 in the Foreclosure Action ("Receivership Order"), Barbara Odwak, Esq. was appointed receiver of the Property (the "Receiver"). The Receiver

4

filed her oath and bond and took possession and control of the Property on or about May 12, 2009 to collect rents and otherwise maintain the Property. Dedvukaj Aff., at ¶ 2, p. 4.

14. The Receiver is currently in possession of $888,108.17 in rents collected from the Property. Dedvukaj Aff., Ex. D.

## DEBTOR'S MISMANAGEMENT OF THE PROPERTY

15. Prior to the appointment of the Receiver, Debtor mismanaged the Property to the detriment of its creditors, particularly GECMC, its largest, and only secured creditor. Dedvukaj Aff., Ex. B.

16. Debtor defaulted under the Note and Mortgage by failing to make the monthly debt service installment payments due on November 1, 2008, December 1, 2008, January 1, 2009 and February 1, 2009. By reason of the foregoing defaults, GECMC accelerated and declared to be due and payable all sums due under the Note and Mortgage. Debtor has not made any payments since October 1, 2008. Dedvukaj Aff., at ¶ 9; Cunningham Aff., Ex. E.

17. While in control of the Property, Debtor employed its General Partner, Hoti Management, to manage the Property until on or about May 12, 2009 when the Receiver took possession of the Property. Dedvukaj Aff., at ¶ 9. Hoti Management is 100% owned by Gjelosh Dedvukaj, who also holds a 27.25% ownership interest in Debtor. Id., at ¶ 2.

18. Debtor and Hoti Management operate out of the same offices and Hoti Management was involved in every aspects of Debtor's business. Dedvukaj Aff., at ¶ 9. Hoti Management operated the Property, entered into residential leases as landlord, collected rents, paid bills, provided janitorial services and negotiated all other essential contracts for the upkeep and maintenance of the Property. Id. All payments with respect to the Property were made using Hoti Management accounts. Id.

19. Although Debtor, not Hoti Management, is the obligor under the Note and Mortgage, and the assignor under the Assignment of Leases and Rents pledging the leases and rents as additional collateral to secure the obligations under the Note, Debtor allowed Hoti Management, an entity not obligated under any of these instruments, to enter into leases directly with the tenants at the Property as lessor ("Leases"). Dedvukaj Aff., at ¶ 9. Not only did these actions violate the terms of the Mortgage and Assignment of Leases and Rents, it significantly compromised GECMC's collateral.

20. In 2008, in exchange for its services as manager of the Property, Debtor paid Hoti Management $694,895, or 31% of the rental income as a "management fee" according to Debtor's 2008 financial statements. Cunningham Aff., Ex. F. For the period January 1, 2009 through June 30, 2009, Debtor paid Hoti Management $618,000, or 72% of the rental income, as a "management fee." Cunningham Aff., Ex. G. Pursuant to the Mortgage, the maximum allowable management fee is 3%. The excessive fees paid by Debtor to Hoti Management at the same time that the Debtor was in default of its obligations to GECMC established that Debtor managed the properties not for the benefit of its creditors, but for the benefit of insiders.

21. Debtor continued its misconduct after the Receiver took control of the Property

22. The Receivership Order was entered on March 16, 2009, and the Receiver took physical control of the Property on or about May 12, 2009, after filing her oath and posting her bond. Dedvukaj Aff., at ¶ 2. That Receivership Order precluded Debtor from collecting rents after March 16, 2009 and required Debtor to turn over any rents collected after that date to the Receiver. Cunningham Aff., Ex. H. Despite the fact that the Receiver was entitled to all rents paid after her appointment on March 16, 2009, Debtor did not turn over to the Receiver any rents paid from March 16, 2009 through May 12, 2009. GECMC demanded that Debtor turn over of

all such rents, as did the Receiver, but Hoti failed to do so explaining that any such rents were not in its possession, but would be in the possession of Hoti Management.[1] Cunningham Aff., Exs. I and J.

23. Debtor similarly ignored the Receivership Order's directive to immediately turn over all security deposits to the Receiver. By letter dated September 24, 2010, 18 months after the Receivership Order was signed, the Receiver again demanded that Debtor turn over the security deposits. Cunningham Aff., Ex. K. Debtor has failed to do so.

24. In July 2009, only 4 months after the Receiver was appointed, GECMC was required to advance $156,429.02 for real estate taxes due for the Property because the Receiver had insufficient funds to pay those taxes from Debtors' accounts. Cunningham Aff., at ¶ 13. Debtor either did not have, or did not turn over to Receiver, amounts sufficient to cover the real estate taxes due.

25. The Debtor's mismanagement of the Property is evident and reflects Debtor's unwillingness to use the Property in a manner that benefits its creditors. When in possession and control of the Property, Debtor put the interests of its principals and insiders ahead of the interests of its creditors by compromising GECMC's collateral by allowing Hoti Management to enter into leases directly with tenants and by paying excessive "management fees" to Hoti Management at its creditors' expense.

26. While the Property has been under her control, the Receiver has collected rents, paid all taxes and other expenses for the Property, submitted all required municipal filings, and addressed necessary repairs. When the Receiver took control of the Property in May 2009, her

---

[1] Although not a party to the Foreclosure Action because it has no interest in the Property and is not an obligor under the Note and Mortgage, Hoti Management was nevertheless bound by the Receivership Order which enjoins and restrains Debtors' agents and representatives. Cunningham Aff., Ex. H

month end accounting for May reflected a balance of $21,818.82, and as of August 2010, the Receiver has cash on hand of $888,108.17. Cunningham Aff., at ¶ 14; Dedvukaj Aff., Ex. D. Under her control, the Property has provided a steady stream of rental income, at least in part because the Receiver has paid its management company reasonable fees well-below the excessive insider fees paid by Debtor to Hoti Management. Dedvukaj Aff., Ex. D.

27. By this 543 Motion, GECMC seeks entry of an order excusing compliance with § 543 of the Bankruptcy Code pursuant to § 543(d)(1) of the Bankruptcy Code or, alternatively, converting this case to a case under chapter 7 of the Bankruptcy Code pursuant to §§ 105(a) and 1112(b) of the Bankruptcy Code.

## **BASIS FOR RELIEF REQUESTED**

**A.     This Court Should Excuse Compliance With Section 543 of the Bankruptcy Code**

28. Section 543(d)(1) of the Bankruptcy Code provides that, "[a]fter notice and hearing, the bankruptcy court…may excuse compliance with subsection (a), (b), or (c) of [§ 543 of the Bankruptcy Code] if the interest of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian[2] to continue in possession, custody, or control of such property…" 11 U.S.C. § 543(d)(1).[3]

---

[2] A state court appointed receiver is a "custodian" within the meaning of §101(1100 of the Code. In re 245 Assocs., L.L.C., 188 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1995).

[3] Section 543, in pertinent part requires that:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>
> (b) A custodian shall—
>
> > (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that

8

29. In determining whether cause exists to allow a receiver to retain possession and administration of the property, the bankruptcy court must analyze the following factors: 1) whether there will be sufficient income to fund a successful reorganization; 2) whether the debtor will use the property for the benefit of its creditors; 3) whether there has been mismanagement by the debtor; and 4) whether there are preferences which a receiver is not empowered to avoid. In re Lizeric Realty Corp., 188 B.R. 499, 506-07 (Bankr. S.D.N.Y. 1995); In re Constable Plaza Assocs., L.P., 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991). The interests of the debtor are not part of the criteria considered when applying § 543(d). In re Dill, 163 B.R. 221, 226 (E.D.N.Y. 1994).

30. "Section 543(d) cases are fact intensive, turning upon whether the assets of a particular debtor should be administered by the existing custodian or returned to the debtor." In re Uno Broad. Corp., 167 B.R. 189, 200-01 (Bankr. D. Ariz. 1994) (allowing receiver to remain in place when receiver was moving expeditiously and professionally to manage debtor's affairs and substantial evidence of debtor's mismanagement was presented).

**The Debtor's Mismanagement and Use of the Property for the Benefit of Insiders**

31. Two of the elements this Court must consider in considering whether to excuse the court appointed receiver from turning over the Property to the Debtor is whether the Debtor mismanaged the Property and whether the Debtor will use the Property for the benefit of its creditors. In re Lizeric Realty, 188 B.R. at 506-07. In the face of the Debtor's prior

---

is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

mismanagement, there is no basis to conclude that Debtor will use the Property for the benefit of its creditors.

32. Where evidence of mismanagement exists, courts have exercised their discretion to excuse the receiver from compliance under § 543(d)(1) of the Bankruptcy Code to avoid the unnecessary confusion, expense and disruption attendant to requiring compliance with subsections (a) through (c) of § 543 of the Bankruptcy Code. See In re Lizeric Realty Corp., 188 B.R. at 506-507 (court found that debtor previously mismanaged the property where, prior to the receiver's appointment, debtor defaulted under two mortgages, failed to pay taxes and permitted liens to be filed against the property); In re Dill, 163 B.R. at 226 (affirming bankruptcy court holding that receiver should be excused from turnover requirements for mismanagement where Debtor spent security deposits, failed to obtain certificates of occupancy and secured creditor had to pay for repairs to the properties); In re CCN Realty Corp., 19 B.R. 526 (Bankr. S.D.N.Y. 1982) (receiver allowed to continue in possession of property where Debtor has no incentive to collect rent other than to satisfy the secured claim asserted by the bank); In re Plantation Inn Partners, 142 B.R. 561, 563 (Bankr. S.D. Ga. 1992) (receiver excused from turnover where court found that debtor had defaulted on mortgage payments, failed to pay taxes, paid over $50,000.00 to debtor's principal or his affiliated companies for "management services" without documentation or justification, failed to report revenues and pay franchise fees to its franchisor, failed to place casualty and liability insurance on the property, allowed flood insurance to lapse, hired an unqualified manager for the hotel, and failed to maintain current accounting records); In re WPAS, Inc., 6 B.R. 40, 44 (Bankr. M.D. Fla. 1980) (court permitted receiver to remain in possession and control of assets where debtor disregarded its obligation to file payroll tax returns and pay FICA taxes and drew checks on accounts without determining the sufficiency of funds).

33. The Debtor's management of the property is similarly deficient here.

34. As detailed above, while in possession and control of the Property, Debtor diverted the rental income to Hoti Management and its insiders while in default of its obligations to its secured creditor. Debtor's past actions show that it has put the interests of itself over the interests of its creditors, particularly GECMC, and there is no reason to expect anything different now.

35. Debtor allowed Hoti Management to enter into leases with tenants in violation of the Mortgage and the Assignment of Leases and Rents. When the Receiver took control of the Property, there were insufficient funds on hand to pay real estate taxes which required GECMC to advance $156,429.02.

36. Not only did Debtor fail to properly manage the Property while in possession of it, Debtor also ignored its obligations under the Receivership Order by failing to turn over to the Receiver any rents collected and all security deposits.

**Whether Income is Sufficient to Fund a Plan**

37. Another consideration in determining whether to excuse the Receiver from the turn over requirements of § 543 of the Bankruptcy Code is whether there will be sufficient income to fund a successful reorganization. In re Lizeric Realty Corp., 188 B.R. at 506-07. It is difficult to determine at this point whether there will be sufficient income to fund a plan. However, GECMC's claim exceeds $38,283,942.22 and the Receiver is holding $888,108.17 in income from the Property. GECMC has not received any payments towards Debtor's obligations under the Note and Mortgage since October 2008. The Debtor values the Property at $14,450,000 based on an appraisal performed in 2009. Dedvukaj Aff., Ex. C. If accurate, GECMC will not only be Debtor's largest secured creditor, it will also have a significant

deficiency claim that will dominate the unsecured class. In light of its secured and unsecured claim, it will be impossible for Debtor to reorganize without GECMC's consent.

38. GECMC believes that the protection of the Property and its rental income should be paramount to the Debtor and that the Debtor's possession of the Property will compromise the Property. If Debtor's true intention is to reorganize, it should be willing to do what is in the best interest of its creditors which is to allow the Receiver to remain in place.

**There are No Known Preferences Which the Receiver Is Not Empowered to Avoid**

39. The final consideration in determining whether to excuse the court appointed receiver from turning over the Property to Debtor is whether there are any preferences which the Receiver would be unable to avoid. Id.

40. GECMC is aware of no such preferences.

**B.    Alternatively, This Court Should Convert This Case To A Case Under Chapter 7**

41. Bankruptcy Code § 1112(b) provides, in pertinent part, as follows:

> (1) [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that established that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (4) For purposes of this subsection, the term "cause" includes –
>
>  (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; [or]
>
>  (B) Gross mismanagement of the estate.

42. In applying § 1112(b)(1) of the Bankruptcy Code, the Court must dismiss or convert if it finds that "cause" exists under § 1112(b)(4). In re Prods. Int'l Co., 395 B.R. 101, 107-09 (Bankr. D. Ariz. 2008); In re Gateway Access Solutions, Inc., 374 B.R. 556, 560-61

(Bankr. M.D. Pa. 2007). The party opposing the motion to dismiss or convert has the burden of proof to show unusual circumstances. Id. at 561. "[T]he phrase 'unusual circumstances' contemplates conditions that are not common in chapter 11 cases. In re Fisher, 2008 WL 1775123 (Bankr. D. Mont. 2008)." Prods. Int'l, 395 B.R. at 109 (citing COLLIER ON BANKRUPTCY ¶ 1112.04[3]).

43. Section 1112(b)(4) of the Bankruptcy Code sets forth various sufficient species of "cause" for conversion or dismissal, and GECMC is relying specifically on the two it excerpts above: (a) continuing loss/diminution and unlikely rehabilitation and (b) gross mismanagement. However, "cause" is a flexible standard and the § 1112(b)(4) criteria are non-exclusive. Prods. Int'l, 395 B.R. at 107. See also Gateway Access Solutions, 374 B.R. at 561; In re The AdBrite Corp., 290 B.R. 209, 216-17 (Bankr. S.D.N.Y. 2003); Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.), 382 B.R. 652, 682 (Bankr. D. Del. 2008); § 102(3) (in the Bankruptcy Code, "'includes' and 'including' are not limiting"). Since the Court may apply § 1112(b)(1) sua sponte, the Court here may convert the case on any ground specified in § 1112(b)(4) or other sufficient "cause" that it finds even if not set forth in this Motion. In re Starmark Clinics, LP, 388 B.R. 729, 735 (Bankr. S.D. Tex. 2008).

44. The facts above clearly demonstrate that the Debtor grossly mismanaged the Property prior to the appointment of the Receiver and disregarded its obligations under the Receivership Orders after the Receiver's appointment. Allowing the Debtor to operate as a debtor-in-possession will only lead to further diminution of the estate and will not likely result in a successful rehabilitation. Furthermore, based on the Debtor's valuation of the Property, GECMC will not only be Debtor's largest secured creditor, it will also have a significant

deficiency claim that will dominate the unsecured class. In light of this, it will be impossible for Debtor to reorganize without GECMC's consent.

45. Accordingly, this Court should convert this bankruptcy case to a chapter 7 case pursuant to § 1112(b) of the Bankruptcy Code.

**NOTICE**

46. GECMC has provided notice of this 543 Motion to (a) counsel to the Debtor; (b) the Office of the United States Trustee; (c) the Debtor's creditors and (d) all parties filing a notice of appearance in this case. GECMC submits that such notice is sufficient and that no further notice need be given.

**NO PRIOR APPLICATION**

47. No previous application for the relief sought herein has been made by GECMC to this or any other court.

WHEREFORE, GECMC seeks entry of an order excusing compliance with § 543 of the Bankruptcy Code pursuant to § 543(d)(1) of the Bankruptcy Code or, alternatively, converting this case to a case under chapter 7 of the Bankruptcy Code pursuant to §§ 105(a) and 1112(b) of the Bankruptcy Code and such other and further relief as is just and proper.

Dated: October 22, 2010
      New York, New York

**DLA PIPER LLP (US)**

/s/
Thomas R. Califano
Kerry Ford Cunningham
Vincent J. Roldan
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:   (212) 835-6000
Fax:   (212) 835-6001

*Counsel for GECMC 2007 C-1 Burnett Street, LLC*