Thomas R. Califano
Kerry Ford Cunningham
Vincent J. Roldan
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

*Counsel for GECMC 2007 C-1 Burnett Street,  LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOTI ENTERPRISES, LP, | : | Case No. 10-24129 (RDD) |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOTI REALTY MANAGEMENT CO., INC. | : | Case No. 10-24130 (RDD) |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

## MOTION OF GECMC 2007 C-1 BURNETT STREET, LLC, FOR AN ORDER GRANTING (I) RELIEF FROM THE AUTOMATIC STAY OR, ALTERNATIVELY, (II) DISMISSAL OF THE CHAPTER 11 CASES

GECMC 2007 C-1 Burnett Street, LLC ("GECMC"), the holder of a first mortgage on the sole asset of Hoti Enterprises, LP ( "Hoti" together with Hoti Realty Management Co., Inc., "Hoti Management", the "Debtors"), certain real property in Brooklyn, New York (the "Property"), by and through its counsel DLA Piper LLP (US), hereby moves this Court for the entry of an order granting (i) GECMC relief from the automatic stay in the Debtors' cases to permit GECMC to exercise certain of its rights pursuant to loan documents and applicable bankruptcy and non-bankruptcy law or, in the alternative, (ii) dismissal of these chapter 11 cases

(the "Stay Relief Motion"). In support of the Stay Relief Motion, GECMC respectfully represents as follows:

## I. PRELIMINARY STATEMENT

These bankruptcy cases were filed for the sole purpose of trying to frustrate and otherwise delay the efforts of GECMC, the sole secured creditor, to foreclose on its collateral. The cases essentially involve a classic two-party dispute between a secured lender and its borrower with respect to assets as to which Hoti has no equity value and there is no hope to reorganize. To make matters worse, the Debtors have offered absolutely no adequate protection of GECMC's interest in the collateral or a business plan to support emergence from bankruptcy. The automatic stay should be terminated to allow GECMC to foreclose on its collateral or, alternatively, these cases should be dismissed.

Unless the relief sought herein is granted, GECMC's collateral will be at risk of diminution in value. Indeed, Hoti has shown a complete inability to preserve the value of collateral but rather has mismanaged the Property for the benefit of Hoti's insiders and in flagrant disregard of its obligations to creditors. Hoti defaulted under the Loan Documents (defined below), failed to make any payments to GECMC since October 1, 2008, paid excessive "management fees" to its affiliate, Hoti Management, and entered into unauthorized leases of the Property in the name of Hoti Management. Before the bankruptcy filings, GECMC diligently sought to preserve its rights in part by commencing a foreclosure action and obtained an order appointing a receiver over the Property (the "Receiver") on March 16, 2009. The Debtors continued their mismanagement by violating the terms of the receivership order by failing to turn over rents and security deposits – assets subject to GECMC's security interest. Furthermore, Hoti failed to pay $156,429.02 in real estate taxes which necessitated GECMC to pay such taxes

itself to preserve the value of its collateral. Ultimately, the Debtors filed for bankruptcy in a blatant attempt to frustrate GECMC's foreclosure efforts.

Following the commencement of these cases, GECMC filed a motion to excuse the Receiver's compliance with section 543 of the Bankruptcy Code or, alternatively, for conversion of these cases to chapter 7 (the "543 Motion"). That motion is pending and is scheduled to be heard by this Court on November 22, 2010. Regardless of the outcome of the 543 Motion, however, these bankruptcy cases serve no purpose other than to delay GECMC's efforts to foreclosure on its collateral. GECMC's loan is undersecured by a significant margin, with the deficiency being large enough to dwarf the amount of all other unsecured claims in the case. GECMC's claim is approximately $38,000,000 and, according to Hoti's own admission, the value of the Property is only $14,450,000. Because GECMC effectively can block any plan of reorganization, there is no realistic prospect for a reorganization.[1] Furthermore, Hoti is unable to use cash collateral without GECMC's consent and has not offered, and will not be able to offer, any adequate protection of GECMC's interest in Hoti's assets. Indeed, Hoti has failed to make any payments to GECMC in respect of the Loan Documents since October 1, 2008.

For the foregoing reasons, cause exists to lift the automatic stay so GECMC can foreclose on its collateral and otherwise exercise all rights and remedies available to it under the Loan Documents. Alternatively, for similar reasons, GECMC submits that these cases should be dismissed because these cases were filed in bad faith and there is no reasonable likelihood of reorganization.

---

[1] Similarly, Hoti Management's only significant assets are leases that were entered into with respect to the Property, in violation of the Loan Documents. Hoti Management has no business unrelated to the Property and it too cannot reorganize.

## II. INTRODUCTION

1.      On October 12, 2010 (the "<u>Petition Date</u>"), the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York.  Consideration of this matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3.      Venue of the Debtors' chapter 11 cases and this Stay Relief Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought are 11 U.S.C. §§ 105(a), 362(d)(1), 362(d)(2) and 1112(b).

5.      On October 22, 2010, GECMC filed the 543 Motion.  In connection with and in support of the 543 Motion, GECMC submitted an affidavit of Kerry Cunningham, Esq. (the "<u>Cunningham Affidavit</u>").  The facts set forth in the Cunningham Affidavit are incorporated as if fully set forth herein.  A hearing on the 543 Motion has been scheduled for November 22, 2010.

6.      On November 5, 2010, GECMC submitted a second affidavit of Kerry Cunningham in support of this Stay Relief Motion (the "<u>Second Cunningham Affidavit</u>").

## III. BACKGROUND

7.      Hoti is a closely held limited liability partnership which owns and operates the Property, which is a residential apartment complex located at 2801 Fillmore Avenue, 3001 Avenue R and 2719 Fillmore Avenue, Brooklyn, New York with 144 apartments and 50 garage spaces.  <u>See</u> Affidavit of Victor Dedvukaj sworn to October 12, 2010 submitted in support of Hoti's bankruptcy petition ("<u>Dedvukaj Aff.</u>"), at ¶ 2.

8.      Based on an appraisal ("<u>Appraisal</u>") performed in December 2008 by Appraisers and Planners of the Property, the Property is worth approximately $14,450,000.  <u>See</u> Dedvukaj Aff., Ex. C.

9.      Hoti Management is an affiliate of Hoti and was the management company for the Property.  Though Hoti Management does not own the Property, it purportedly entered into leases as landlord with respect thereto (without any authorization from GECMC and in violation of the Loan Documents).  Hoti Management has no business other than its work as a management company for Hoti.  Hoti Management's bankruptcy filings show that it has no employees, no cash flow, and de minimus assets.

10.     Hoti's limited partners are all family members.  Dedvukaj Aff., at ¶ 2.  Hoti is owned by Victor Dedvukaj (10%), Gjelosh Dedvukaj (27.25%), Marash Dedvukaj (24.5%), Violeta Dedvukaj (14.5%), Maruka Dedvukaj (22.75%) and Hoti Management, Hoti's General Partner (1%).  Dedvukaj Aff., Ex. F.  Hoti Management is, in turn, owned 100% by Gjelosh Dedvukaj.  Dedvukaj Aff., at ¶ 9.

11.     Pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated February 15, 2007 (the "<u>Mortgage</u>"), between Hoti and Deutsche Bank Mortgage Capital, L.L.C., Hoti pledged the Property as collateral to secure, among other things, payments due under an Amended, Restated and Consolidated Promissory Note in the principal sum of $31,000,000 (the "<u>Note</u>").  Dedvukaj Aff., at ¶ 2; Cunningham Affidavit, Ex. A.  The Mortgage was duly recorded in the Office of the Register of the City of New York, Kings County on March 1, 2007 at CRFN 2007000112921, and constitutes a valid and enforceable first priority lien on the Property.  Id. at ¶ 2; Cunningham Aff., Ex B.

12.     The Mortgage was assigned to GECMC by Assignment of Mortgage dated February 6, 2009, and duly recorded in the Register's Office on February 23, 2009 at CRFN 2009000051863.  Cunningham Aff., Ex. C.

13.     The Mortgage assigns to GECMC all rents, royalties, issues, profits, bonus money, revenue, income rights and other benefits from the Property from time to time accruing (collectively, the "Rents" and together with the Property the "Collateral").  Cunningham Aff., Ex. B at ¶ 6.

14.     Additionally, Hoti executed and delivered an Assignment of Leases and Rents dated February 15, 2007, (referenced at section 6.1 of the Mortgage) which was duly recorded in the Office of the Register of the City of New York Kings County on March 1, 2007 at CRFN 2007000112922, and was subsequently assigned to GECMC by assignment dated February 6, 2009 and recorded on February 23, 2009 at CRFN 2009000051864 (collectively the "Assignment of Rents" and, together with the Note and the Mortgage, the "Loan Documents"). Cunningham Aff., Ex. D.

15.     Hoti defaulted under the Loan Documents by failing to make the monthly debt service installment payments due on November 1, 2008, December 1, 2008, January 1, 2009 and February 1, 2009. Cunningham Aff., Ex. E at ¶ 10.  Hoti has not made any payments under the Loan Documents since October 1, 2008.  Dedvukaj Aff., at ¶ 9; Cunningham Aff., Ex. E.

16.     As of November 11, 2009, GECMC was due $38,283,942.22 under the Loan Documents, exclusive of attorneys' fees.  Dedvukaj Aff., Ex. C, n. 5 (acknowledging that GECMC believes that it is owed approximately $38 million, and admitting that GECMC is owed at least $31 million).

17.     On or about February 27, 2009, GECMC commenced an action to foreclose the Mortgage entitled GECMC 2007-C1 Burnett Street. LLC v. Hoti Enters. L.P., et al., (N.Y. Supreme Court, Kings County, Index No. 5006/2009) (the "Foreclosure Action"). Cunningham, Aff., Ex. E.  By Order dated March 16, 2009 in the Foreclosure Action ("Receivership Order"), Barbara Odwak, Esq. was appointed Receiver of the Property.  The Receiver filed her oath and bond and took possession and control of the Property on or about May 12, 2009 to collect rents and otherwise maintain the Property.  Dedvukaj Aff., at ¶ 2, p. 4.

18.     The Foreclosure Action was in its advanced stages as of the Petition Date. The Debtors posed no defenses or counterclaims.  On September 21, 2010, several weeks prior to the Petition Date, the referee in the Foreclosure Action signed his referee's report concluding that the Property should be sold at foreclosure sale in gross and that the amount owed to GECMC through November 11, 2009 was $38,283,942.22.  See Second Cunningham Affidavit, Ex. A. GECMC was in the process of preparing its motion to confirm the report and for judgment of foreclosure and sale when Debtors filed for bankruptcy.  See Second Cunningham Affidavit, para. 3.

### IV. DEBTORS' MISMANAGEMENT OF THE PROPERTY

19.     GECMC is by far Hoti's largest creditor, and only secured creditor. Dedvukaj Aff., Ex. B.  Prior to the appointment of the Receiver, Hoti mismanaged the Property to the detriment of its creditors, particularly GECMC.

20.     As stated above, Hoti defaulted under the Loan Documents by failing to make the monthly debt service installment payments due on November 1, 2008, December 1, 2008, January 1, 2009 and February 1, 2009.  By reason of the foregoing defaults, GECMC accelerated

and declared to be due and payable all sums due under the Loan Documents. Hoti has not made any payments since October 1, 2008. Dedvukaj Aff., at ¶ 9; Cunningham Aff., Ex. E.

21. While in control of the Property, Hoti employed its General Partner, Hoti Management, to manage the Property until on or about May 12, 2009 when the Receiver took possession of the Property. Dedvukaj Aff., at ¶ 9. Hoti Management is 100% owned by Gjelosh Dedvukaj, who also holds a 27.25% ownership interest in Hoti. Id., at ¶ 2.

22. The Debtors operate out of the same offices and Hoti Management was involved in every aspects of Hoti's business. Dedvukaj Aff., at ¶ 9. Hoti Management operated the Property, entered into residential leases as landlord, collected rents, paid bills, provided janitorial services and negotiated all other essential contracts for the upkeep and maintenance of the Property. Id. All payments with respect to the Property were made using Hoti Management accounts. Id.

23. Although Hoti, not Hoti Management, is the obligor under the Loan Documents, and the assignor under the Assignment of Leases and Rents pledging the leases and rents as additional collateral to secure the obligations under the Note, Hoti allowed Hoti Management, an entity not obligated under any of these instruments, to enter into leases directly with the tenants at the Property as lessor ("Leases"). Dedvukaj Aff., at ¶ 9. Not only did these actions violate the terms of the Mortgage and Assignment of Leases and Rents, it significantly compromised GECMC's Collateral.

24. In 2008, in exchange for its alleged services as manager of the Property, Hoti paid Hoti Management $694,895, or 31% of the rental income received in 2008 as a "management fee" according to Hoti's 2008 financial statements. Cunningham Aff., Ex. F. For the period January 1, 2009 through June 30, 2009, Hoti paid Hoti Management $618,000, or 72% of the

rental income received during that period, as a "management fee." Cunningham Aff., Ex. G. Pursuant to the Mortgage, the maximum allowable management fee is 3% of rental income received per year. The excessive fees paid by Hoti to Hoti Management at the same time that the Hoti was in default of its obligations to GECMC establishes that Hoti managed the properties not for the benefit of its creditors, but for the benefit of insiders.

25.     Hoti continued its misconduct after the Receiver took control of the Property. The Receivership Order was entered on March 16, 2009, and the Receiver took physical control of the Property on or about May 12, 2009, after filing her oath and posting her bond. Dedvukaj Aff., at ¶ 2. That Receivership Order precluded Hoti from collecting rents after March 16, 2009 and required Hoti to turn over any rents collected after that date to the Receiver. Cunningham Aff., Ex. H. Despite the fact that the Receiver was entitled to all rents paid after her appointment on March 16, 2009, Hoti did not turn over to the Receiver any rents paid from March 16, 2009 through May 12, 2009. GECMC demanded that Hoti turn over of all such rents, as did the Receiver, but Hoti failed to do so explaining that any such rents were not in its possession, but would be in the possession of Hoti Management.[2] Cunningham Aff., Exs. I and J.

26.     Hoti similarly ignored the Receivership Order's directive to immediately turn over all security deposits to the Receiver. By letter dated September 24, 2010, 18 months after the Receivership Order was signed, the Receiver again demanded that Hoti turn over the security deposits. Cunningham Aff., Ex. K. Hoti has failed to do so.

27.     In July 2009, only 4 months after the Receiver was appointed, GECMC was required to advance $156,429.02 for real estate taxes due for the Property because the Receiver

---

[2] Although not a party to the Foreclosure Action because it has no interest in the Property and is not an obligor under the Loan Documents, Hoti Management was nevertheless bound by the Receivership Order which enjoins and restrains Debtors' agents and representatives. Cunningham Aff., Ex. H

had insufficient funds to pay those taxes from Hoti's accounts. Cunningham Aff., at ¶ 13. Hoti either did not have, or did not turn over to Receiver, amounts sufficient to cover the real estate taxes due.

28. The Debtors' mismanagement of the Property is evident and reflects Debtors' unwillingness to use the Property in a manner that benefits its creditors. When in possession and control of the Property, Hoti put the interests of its principals and insiders ahead of the interests of its creditors by compromising GECMC's Collateral by allowing Hoti Management to enter into leases directly with tenants and by paying excessive "management fees" to Hoti Management at its creditors' expense.

29. By this Stay Relief Motion, GECMC seeks entry of an (i) terminating the automatic stay in both Debtors' cases to allow GECMC to pursue its rights under the Loan Documents under applicable law or, in the alternative, (ii) dismissing the chapter 11 cases; and (iii) granting GECMC such other and further relief as the Court deems just and proper.

## V. BASIS FOR RELIEF REQUESTED

### A. Cause Exists to Lift the Automatic Stay Pursuant to 11 U.S.C. Section 362(d)(1)

30. Cause exists for relief from the automatic stay in order to permit GECMC to exercise its rights under applicable law. Section 362(d)(1) of the Bankruptcy Code provides that:

> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

31. While the Bankruptcy Code does not define "cause," it is a flexible concept, and whether sufficient cause exists to lift the stay is determined by the totality of the circumstances

on a case-by-case basis.  See, e.g.,  In re Project Orange Associates, LLC, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010); In re M.J. & K. Co., Inc., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). Here, Hoti has a history of compromising the value of GECMC's Collateral.  The totality of the circumstances present in this case militate toward a finding of sufficient "cause" to warrant relief from the automatic stay.  As set forth below, Hoti (i) defaulted on its payment obligations to GECMC, (ii) allowed Hoti Management to enter into Leases in violation of the Loan Documents, (iii) refused to turn over rents and security deposits to the Receiver in violation of a court order, and (iv) failed to pay real estate taxes necessitating the payment of such taxes by GECMC.

32.     Hoti has not provided, or offered to provide, GECMC any form of adequate protection to protect against the likely diminution in the value of its Collateral and, in fact, has not made any payments to GECMC since October 1, 2008.  Dedvukaj Aff., at ¶ 9; Cunningham Aff., Ex. E.  Meanwhile, the operation and maintenance of the Property is being funded solely from GECMC's cash collateral.

33.     Hoti has filed no financial projections in these cases but rather attached to an affidavit filed with its petition an August 2010 financial statement of the Receiver.  That financial statement shows net cash flow for the Property of $97,815.64 for the period from August 1, 2010-August 31, 2010.  That figure does not include payments for attorneys fees, the United States Trustee's fees, management company fees for the Property, or real estate taxes that will be due in January 2011.  The Receiver's financial statement for September 2010 in fact shows negative cash flow in the amount of $9,362.83 for the period September 1, 2010-September 30, 2010. See Second Cunningham Affidavit, Ex. B.  Thus, upon information and

belief, based upon current vacancies, the Property is not generating sufficient income to make any adequate protection payments to GECMC.[3]

34.     For the foregoing reasons, GECMC's secured interest in the Property is not adequately protected and the value of GECMC's Collateral is at risk of continuing diminution in value during these bankruptcy cases. See 11 U.S.C. § 362(d)(1) (providing that a court may terminate, annul, modify, or condition the stay if a party's interest in property is not adequately protected). Therefore, "cause" exists to lift the automatic stay pursuant to Bankruptcy Code section 362(d)(1).

**B.     Automatic Stay Should Be Terminated With Respect To The Property Pursuant To 11 U.S.C. Section 362(d)(2)**

35.     Bankruptcy Code section 362(d)(2) provides that the Court shall grant relief from the automatic stay where the debtor has no equity in the subject property and said property is not necessary to an effective reorganization. See 11 U.S.C. § 362(d)(2); In re Mount Moriah Baptist Church, Inc., No. 10-11199, 2010 WL 1930937, at *3 (Bankr. S.D.N.Y. May 12, 2010) (lifting stay upon finding that the debtor had a lack of equity in the property and the debtor's lack of realistic prospects for effectuating a reorganization). Furthermore, the debtor has the burden of proof with respect to each and every issue once the party seeking relief from the automatic stay has demonstrated that the debtor has no equity in the property. See 11 U.S.C. § 362(g); In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990).

**1.     Debtors Have No Equity In The Property**

36.     The debtor has no equity in the property where the sum of all liens is equal to or exceeds the market value of the property. See, e.g., In re YL West 87th Holdings I LLC, 423

---

[3]  The Mortgage sets interest at the rate of 5.849% ($156,135.81 per month), and requires the funding of $42,757.31 per month for tax and insurance premium escrows. See Second Cunningham Affidavit, ¶ 5. It is doubtful that Hoti would be able to make such payments as adequate protection.

B.R. 421, 428 (Bankr. S.D.N.Y. 2010) (defining equity as "the difference between the property value and the total amount of liens against it").

37.     By the Debtors' admission, the value of the Property is over $15 million less than the outstanding balance of the debt that is secured by the Property.  In the present case, the Appraisal reflects that the Property is worth approximately $14,450,000.  Dedvukaj Aff., Ex. C. Additionally, the Debtors listed the total amount of GECMC's claim as $31,000,000.[4]  Dedvukaj Aff., Ex. C.  Although the Appraisal was performed in December 2008, there has been no evidence presented, or even a suggestion, that the value of the Property has increased since that time.  The Appraisal and the Dedvukaj Aff. indicate that GECMC's claim is far in excess of the value of the Property, and therefore establishes that Hoti has no equity in the Property.

**2.     There Is No Possibility Of An Effective Reorganization**

38.     In the case at bar, there is no possibility of an effective reorganization because (i) management has mismanaged the Property, (ii) the value of the Property is significantly less than the amount of debt secured by the Property and (iii) a plan cannot be confirmed over GECMC's objection.  Since the Debtors have no equity in the Property, the Debtors bear the burden of proof with respect to whether the Property is necessary for an effective reorganization. See United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 375-76 (1988). The Supreme Court has noted that in order to satisfy its burden, the debtor must show there is "a reasonable possibility of a successful reorganization within a reasonable time."  Id. at 376 (quoting In re Timbers of Inwood Forest Assoc., 808 F.2d 363, 370-71, and nn. 12-13 (5th Cir. 1987)).  "At a minimum, the debtor must provide the Court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Code to effectuate a reorganization within a

reasonable period of time." Id. To show that the property is necessary for an effective reorganization, the debtor has the burden to prove that the property is both necessary for an effective reorganization and that a successful reorganization is reasonably possible within a reasonable time frame. 11 U.S.C. § 362(g)(2); In re Henrico Hotel Assocs., L.P., 1994 WL 16191612, at *3 (Bankr. E.D. Va. 1994) (holding that it falls upon the debtor to disprove by a preponderance of the evidence that the property is not necessary for an effective reorganization).

39.     The debtor must show that the reorganization is "in prospect," which means that there must be a reasonable possibility of a successful reorganization within a reasonable time. Timbers of Inwood Forest, 484 U.S. at 375-76; In re Pegasus Agency, Inc., 101 F. 3d 882, 886 (2d Cir. 1996); In re Mount Moriah Baptist Church, Inc., 2010 WL 1930937, at *4; In re Powers Aero Marine Servs., Inc., 42 B.R. 540, 546 (Bankr. Tex. 1984) ("The mere possibility of a reorganization does not amount to proof that an effective reorganization is likely in the near future.") (quoting In re Boca Dev. Assoc., 21 B.R. 624, 628, (Bankr. S.D.N.Y. 1982)).

40.     The mere fact that the debtor is a single asset real estate debtor does not necessitate a finding that the property is necessary for an effective reorganization. See In re One Times Square Assocs. Ltd. P'ship v. Banque Nationale de Paris, 165 B.R. 773, 775 (S.D.N.Y. 1994) ("Although the property in question here is the Debtor's only asset, it is not automatically deemed necessary to an effective reorganization."). As the Court noted in Henrico Hotel Associates, "in a single asset case, the property is almost always necessary if the debtor wishes to reorganize. However, this is not the applicable test." 1994 WL 16191612, at *3.

41.     Courts have held that if a chapter 11 plan was unlikely to be confirmed, absent a certain creditor's affirmative vote, then the property securing the claim is not necessary for an effective reorganization, and thus, the creditor is entitled to relief from automatic stay. See In re

State Street Assocs., L.P., 342 B.R. 32, 44-45 (Bankr. N.D.N.Y. 2005) (holding mortgagee was entitled to automatic stay relief based in part on the fact that chapter 11 debtors likely could not obtain necessary affirmative votes from class of unsecured creditors for plan confirmation); In re 500 Fifth Ave. Assocs., 148 B.R. 1010, 1021 (Bankr. S.D.N.Y. 1993) (a mortgagee establishes that a chapter 11 debtor's property is not necessary to an effective reorganization where no reorganization plan can be confirmed absent the mortgagee's affirmative vote.).[5]

42.     Here, there is no prospect of a successful reorganization.  The Debtors cannot confirm a plan over the objection of GECMC who is simultaneously the only secured creditor and holder of the largest unsecured claim in these cases by a large margin.  See, e.g., In re Nattchase Assocs. Ltd. P'Ship, 178 B.R. 409, 417 (Bankr. E.D. Va. 1994) ("[I]n order to be 'effective,' the plan must be confirmable."); In re YL West 87th Holdings I LLC, 423 B.R. 421, 444 (Bankr. S.D.N.Y. 2010) (debtor must show that the "proposed plan has a realistic chance of being confirmed and is not patently unconfirmable.").  GECMC holds a secured claim against Hoti having an aggregate amount in excess of $38 million.  The Debtors list no other secured creditors besides GECMC.  See Dedvukaj Aff., Exs. A & B.  The Debtors have unsecured claims that are relatively de minimis.  Hoti has no unsecured creditors and Hoti Management has about $500,000 in unsecured debt.  Based upon the recent $14,450,000 appraisal of the Property, GECMC  holds an unsecured deficiency claim in excess of $23.5 million,[6] and therefore will

---

[5] Section 1129(a)(10) of the Bankruptcy Code requires that "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the Plan has accepted the Plan, determined without including the acceptance of the plan by any insider."  11 U.S.C. Sec. 1129(a)(10).

[6] The Debtors have asserted in their "first day" filings that GECMC is owed at least $31,000,000.  Even if that lower claim amount were used, GECMC's unsecured deficiency claim would overwhelm the other unsecured claims against the Debtors.

clearly dominate the vote of any class of unsecured claim holders.[7]  Thus, no chapter 11 plan can be confirmed without the consent of GECMC.

43.     For the foregoing reasons, GECMC meets the requirements of section 362(d)(2) of the Bankruptcy Code and the stay should, therefore, be lifted pursuant to section 362(d)(2).

**C.     If the Automatic Stay Is Not Terminated, the Chapter 11 Case Should Be Dismissed**

44.     Pursuant to Bankruptcy Code section 1112(b)(1), the Court may dismiss a chapter 11 case if the movant establishes "cause".  11 U.S.C. § 1112(b)(1).  The list of causes for dismissal or conversion provided in section 1112 is not exhaustive and the court is given broad discretion in determining what may constitute sufficient "cause."  See Toibb v. Radloff, 501 U.S. 157, 165 (1991); In re Promise Land Dev., LLC, 2010 WL 432336, at *1 (stating cause is established if a party in interest can show that there is a substantial or continuing loss to the estate and with the absence of a reasonable likelihood of reorganization); In re Pensignorkay, Inc., 204 B.R. 676 (Bankr. E.D. Pa. 1997) (finding cause for dismissal in chapter 11 single asset real estate case where debtor unable to confirm plan).

**1.     Cause Exists under Section 1112(b)(4)(A) Because There is a Substantial and Continuing Diminution of the Value of the Property and There is No Reasonable Likelihood of Rehabilitation**

45.     Substantial or continuing loss to or diminution of the bankruptcy estate, coupled with an absence of a reasonable likelihood of rehabilitation, is sufficient grounds for dismissal under section 1112(b) of the Bankruptcy Code.  See 11 U.S.C. § 1112(b)(4)(A).  To conclude that there is a loss or diminution of the estate for purposes of section 1112(b)(4)(A), "[a]ll that

---

[7]     Pursuant to applicable case law, GECMC's deficiency claim could not be separately classified from other unsecured claims against the Debtor's estate.  See Boston Post Road Ltd. Partnership v. F.D.I.C (In re Boston Post Road Ltd. Partnership); 21 F.3d 477, 480 (2d Cir. 1994), cert. denied., 513 U.S. 1109 (1995).  If a mortgagee has a deficiency claim large enough to control the unsecured class, its claim cannot be separately classified in order to engineer an assenting impaired class. See id.

need be found is that the estate is suffering some diminution in value." See In re Citi-Toledo Partners, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994); In re Halal 4 U LLC, No. 08-15216, 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) ("[i]t is not necessary that the losses to the estate be large. All that need be found is that the estate is suffering some diminution in value."); In re First Lewis Road Apartments, Inc., 11 B.R. 576, 577 (Bankr. Va. 1981) (holding diminution of an estate exists where there is an actual depreciation in the value of the property).

46.     Moreover, a debtor lacks a "reasonable likelihood of rehabilitation" where the debtor lacks income or other funds or capital with which to pay expenses. See In re Bay Area Material Handling, Inc., 1996 WL 29262, at *2 (9th Cir. 1996). "Rehabilitation of a debtor's estate implies the re-establishment of a sound financial basis, a concept which necessarily involves establishing a cash flow from which current obligations can be met." Kanterman, 88 B.R. at 29.

47.     Here, as set forth above, it does not appear that Hoti will be able to generate enough revenue to pay its debts post-petition or has the ability to provide adequate protection to GECMC. In addition, GECMC believes that the Debtors' mismanagement shows that the Debtors will not be able to manage the Property without a substantial diminution in the value of the Property. (See infra, ¶¶ 18-27, discussing the prior mismanagement of the Property.) Moreover, GECMC's cash collateral is continuing to be used to operate and maintain the Property. Accordingly, there is a substantial and continuing deterioration in the value of the Collateral. In addition, as discussed above, there is no chance of the Debtors confirming a chapter 11 plan over the objection of GECMC. (See infra, ¶42.) Therefore, there are sufficient grounds to dismiss these cases.

**2.      The Chapter 11 Petitions Are Bad Faith Filings Made to Avoid
Litigation Issues In State Court**

48.      Courts in the Second Circuit have held that where the debtor is engaged in what is essentially a two-party dispute and files for bankruptcy in an attempt to gain a tactical advantage in pending state court litigation, the chapter 11 petition has been filed in bad faith and should be dismissed.  In re C-TC Ave. P'ship, 193 B.R. 650 (Bankr. N.D.N.Y. 1995), aff'd, 196 B.R. 666 (N.D.N.Y. 1996), aff'd, 113 F.3d 1304 (2d Cir. 1997); see also Fraternal Composite Svces, Inc. v. Karczewski, 315 B.R. 253 (N.D.N.Y. 2004) (holding that debtor "filed its Chapter 11 petition in bad faith when it had no reason to reorganize or rehabilitate and its filing of a chapter 11 petition was merely an attempt to avoid litigation issues in state court."); In re Northtown Realty Co., L.P., 215 B.R. 906, 916 (E.D.N.Y. 1998) (dismissing when debtor had only one main asset, claim to one creditor dwarfed all others, and state court action was being litigated when petition was filed).

49.      The central factors evidencing a bad faith filing noted by the Second Circuit are present here.  Those factors include whether:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;

(7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

See C-TC 9th Avenue P'ship v. Norton Co., 113 F.3d 1304, 1311 (2d Cir. 1997).

50.     The facts of this case fall squarely within what the C-TC court would consider a bad faith filing.  Here,

(1) Hoti has only one asset, the Property.  Hoti Management has no assets or business unrelated to the Property;

(2) The Debtors have unsecured creditors whose claims are de minimis when compared to GECMC's deficiency claim;

(3) Hoti's one asset is the subject of the Foreclosure Action as a result of arrearages or default on the debt;

(4) Hoti's financial condition is, in essence, a two party dispute between Hoti and GECMC which can be resolved in the pending Foreclosure Action;

(5) the timing of Hoti's filing evidences an intent to delay or frustrate the legitimate efforts of CECMC to enforce its rights;

(6) Hoti has little or no cash flow;

(7) Hoti cannot meet current expenses including the payment of personal property and real estate taxes and, in fact, Hoti's failure to pay taxes caused GECMC to pay $156,429.02 of its own money to pay taxes on behalf of Hoti ; and

(8) The Debtors have no employees.

Each of the factors required by the Second Circuit are present in this case.  Accordingly, these cases should be dismissed as bad faith filings since it is two-party dispute and the commencement of these chapter 11 cases was merely an attempt to avoid litigation issues in state court.

**3.      Dismissal is in the Best Interests of Creditors and the Estate**

51.     After a determination is made that "cause" exists under section 1112(b) of the Bankruptcy Code, a bankruptcy court is then required to consider "the best interests of the

creditors and estate." <u>See</u> <u>In re Rosenberg</u>, No. 09-46326-CEC, 2010 WL 475131, *5 (Bankr. E.D.N.Y. Feb. 5, 2010); <u>In re Halal 4 U LLC</u>, 2010 WL 3810860, at *2; <u>In re Hampton Hotel Investors, L.P.</u>, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001).

52.     Here, the best interests of the estates are served by dismissing these cases if stay relief is not granted.  Hoti has shown that it is unable to preserve the value of GECMC's Collateral and instead has mismanaged the Property for the benefit of insiders.  In addition, there is no realistic hope for a reorganization.  Therefore, GECMC submits that dismissal is warranted.

## VI. NOTICE

53.     GECMC has provided notice of this Stay Relief Motion to (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) the Debtors' creditors and (d) all parties filing a notice of appearance in this case.  GECMC submits that such notice is sufficient and that no further notice need be given.

## VII. NO PRIOR APPLICATION

54.     No previous application for the relief sought herein has been made by GECMC to this or any other court.

WHEREFORE, GECMC seeks entry of an order (i) terminating the automatic stay in both Debtors' cases to allow GECMC to foreclose on the Collateral and otherwise pursue its rights under the Loan Documents under applicable law or, in the alternative, (ii) dismissing the chapter 11 cases; and (iii) granting GECMC such other and further relief as just and proper.

Dated: November 5, 2010
      New York, New York

**DLA PIPER LLP (US)**

/s/     Thomas R. Califano
Thomas R. Califano
Kerry Ford Cunningham
Vincent J. Roldan
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:   (212) 835-6000
Fax:   (212) 835-6001

Counsel for GECMC 2007 C-1 Burnett Street, LLC