**EXHIBIT "P"**

# EXCLUSIVE ADVISORY AGREEMENT

October ___, 2010

The Carlton Group, Ltd.
560 Lexington Avenue, 10th Floor
New York, NY 10022
Attention: Howard L. Michaels

**Re: Exclusive Advisory Agreement in connection with a debt and equity capital raise and the restructuring of a certain loan secured by the property 1865 Burnett Street, Brooklyn, New York (the "Property")**

To Whom it may Concern:

This agreement (this "Agreement") is entered into between Victor Dedvukaj ("Client") and The Carlton Group, Ltd. ("Carlton").

Client hereby appoints Carlton as its sole and exclusive broker and agent with the exclusive right to negotiate and obtain for the Property one or more first mortgage, mezzanine loan, subordinate loan, preferred equity or joint venture equity term sheets, applications, indications of interest or other financing arrangements (individually or in the aggregate, a "Commitment"), issued by one or more mortgage lender(s) (each a "Lender"), mezzanine lender(s), equity investor(s) and/or joint venture investment partner(s) (each of the foregoing an "EJV Party") on terms acceptable to Client in connection with a discounted payoff of the existing debt secured by the Property and held by Deutsche Bank ("DB") and serviced by LNR (the "Existing Debt"). In addition, Carlton will act as Client's exclusive advisor and agent in connection with the restructuring and/or workout of the Existing Debt and the negotiation with DB and/or LNR of a discounted payoff of the Existing Debt.

This Agreement will commence on the date hereof and continue for a period of nine months from the date the financing memorandum(s) (to be completed by Carlton with information provided by Client) is approved by Client (the "Term").

During the Term, Client shall immediately refer to Carlton all inquiries and offerings received by Client with respect to a possible debt and/or equity financing of the Property by any and all EJV Parties and/or Lenders, or their affiliates, correspondents, or other representatives, regardless of the source of such inquiries or offerings. All negotiations (including negotiations with respect to the restructuring/workout of the Existing Debt) shall be conducted by Carlton or under Carlton's direction, subject to Client's review and final approval.

It is hereby acknowledged that the Property is subject to a bankruptcy proceeding. Notwithstanding anything to the contrary contained herein, this Agreement shall be subject to any decisions, orders or renderings issued by the bankruptcy court. Furthermore, this Agreement shall terminate and be replaced by a new exclusive advisory agreement (the "New Advisory Agreement") which shall contain the same terms as is set forth herein upon approval of the bankruptcy court of the New Advisory Agreement.

1. **CARLTON'S STRUCTURING FEES**

In the event that, at any time during the Term of this Agreement, Client accepts a Commitment in writing from a Lender and/or EJV Party for first mortgage financing secured by the Property, Client shall pay Carlton a commission in an amount equal to one percent (1.0%) of the maximum amount of the Commitment (the "Senior Commission"), which Senior Commission shall be considered earned and payable to Carlton in full upon the initial funding of the transaction.

In the event that, at any time during the Term of this Agreement, Client accepts a Commitment from a Lender and/or EJV Party for mezzanine financing, subordinate financing, joint venture equity and/or preferred equity with respect to the Property (regardless of whether the subordinate piece is provided by the senior Lender or another Lender or EJV Party), Client shall pay Carlton a commission in an amount equal to three percent (3%) of the maximum amount of the Commitment (the "Equity Commission", collectively with the Senior Commission, the "Commission"), which Equity Commission shall be considered earned and payable to Carlton in full upon the initial funding of the transaction.

In addition, if during the Term, Carlton negotiates a discounted payoff of the Existing Debt held by DB and secured by the Property, Client shall pay to Carlton an advisory fee in the amount of ten percent (10%) of the gross savings to Client (the "Advisory Fee"). The Advisory Fee will be computed on the gross amount of savings the Client achieves based on the current outstanding principal balance of the Existing Debt plus all accrued interest and protective advances made by DB and/or LNR. The Advisory Fee will be paid to Carlton upon the closing of the payoff transaction with DB and/or LNR on behalf of DB. Notwithstanding the foregoing, in the event Carlton negotiates a discount of the acquisition price for Existing Debt held by DB and Client does not close on the acquisition of the Existing Debt within the Term, then for a period of six (6) months from the date the Term has expired or terminated (the "Discounted Payoff Exclusive Period"), if Client closes on the acquisition of the Existing Debt within the Discounted Payoff Exclusive Period, Client shall pay Carlton its full Advisory Fee.

Furthermore, in the event a discounted payoff of the Existing Debt does not occur, but instead, Client restructures and/or works out the Existing Debt with DB and/or LNR on behalf of DB, then Client shall pay Carlton a restructuring fee in the amount of $500,000 (the "Restructuring Fee"). The Restructuring Fee shall be due and payable to Carlton upon the closing of the workout and/or restructuring transaction with DB and/or LNR on behalf of DB.

Within ten (10) days after the expiration of the term of this Agreement, Carlton shall provide to Client the list (the "List"). The List shall contain the names of all EJV Parties and/or Lenders to whom the financing proposal was submitted during the Term of this Agreement, whether the financing proposal was submitted to an EJV Party or Lender by Carlton or by Client, and which EJV Parties or Lenders showed an express interest in pursuing a debt and/or equity financing arrangement, whether through discussions, meetings, or other means of communication. If within six (6) months after the termination or expiration of this Agreement, Client enters into a term sheet or other similar document with an EJV Party or Lender appearing on the List, then Client shall pay Carlton the Commission upon the initial funding of such transaction.

## 2. CARLTON'S FUTURE EXCLUSIVE

Should a closing have occurred, in consideration of Carlton's services hereunder, Client and/or any of Client's affiliated companies or funds or entities managed by Client, hereby further appoints Carlton as its sole exclusive broker and agent for Client to negotiate and obtain future financing/equity/joint venture arrangements from the EJV Party or Lender issuing the accepted Commitment, or any of such EJV Party's or Lender's affiliated companies and funds or entities managed by it, for a period of three (3) years from the date said party funds the Commitment. With respect to future fundings pursuant to this Section 2, Client agrees to pay Carlton the aforementioned fees pursuant to the terms of this Agreement.

## 3. PROVIDING INFORMATION TO CARLTON

Client shall furnish to Carlton such information with respect to the Property as Carlton reasonably may request in order to render its services effectively. Client confirms that all information furnished by Client to Carlton shall be true, complete and accurate in all material respects to the best of Client's knowledge. Carlton is hereby authorized to disclose all such information to any prospective EJV Party and/or Lender which information is to be distributed subject to standard and reasonable confidentiality provisions.

## 4. EXPENSES

Client will reimburse Carlton for direct, out-of-pocket expenses associated with the marketing and other related expenses. These expenses will include, but not be limited to: marketing and public relations expenses, travel, expenses associated with the completion of the investment memorandum, and other related expenses.

## 5. INDEMNIFICATIONS

Client shall indemnify, defend and hold Carlton and its shareholders, directors, officers, contractors and employees harmless from and against any liability, cost, claim, damage or expense resulting from (i) any breach by Client of the terms set forth herein and/or (ii) incorrect or incomplete information supplied by Client to Carlton, and the provisions of this sentence shall survive the termination or expiration of this Agreement. The undersigned signatories represent and warrant that they are duly authorized to execute this Agreement on behalf of the undersigned entities.

**6.     LITIGATION**

If either party commences litigation against the other party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other party the costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in such litigation. Each of the parties hereto irrevocably consents to the exclusive jurisdiction of the state and federal courts located in the State of New York in any and all actions between the parties arising hereunder or in connection with the subject matter of this Agreement.

This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, shall be binding on the parties hereto and their respective heirs, executors, administrators, successors and assigns, shall be governed by and construed in accordance with the laws of the State of New York, and cannot be orally modified. If, for any reason, any provision of this Agreement shall be invalid or unenforceable, the validity and effect of the other provisions hereof shall not be affected thereby.

After closing of any transaction for which Carlton is entitled to a structuring fee hereunder, Carlton may publish a notice of the transaction in such format, in such publications and at such times as Carlton deems appropriate.

*< Signatures appear on the next page >*

If the foregoing accurately reflects our agreement, please sign and return the enclosed copy of this letter.

Very truly yours,

_____
VICTOR DEDVUKAJ

Address:

_____
_____
_____

**AGREED:**

**THE CARLTON GROUP, LTD.**


By: _____
Name:   Howard L. Michaels
Title:   Chairman


By: _____
Name:   Robert Gaeta
Title:   Vice President