UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                                          :        Chapter 11
                                                                                      :
HOTI ENTERPRISES, L.P. and                                     :
HOTI REALTY MANAGEMENT CO., INC.,              :        Lead Case No. 10-24129 (RDD)
                                                                                      :
                              Debtors.                                     :
----------------------------------------------------------------x

**STIPULATION AND ORDER CONSENTING  TO USE
OF CASH COLLATERAL AND GRANTING ADEQUATE
<u>PROTECTION TO GECMC 2007-C1 BURNETT STREET, LLC</u>**

## RECITALS

A.     October 12, 2010 (the "<u>Filing Date</u>"), Hoti Enterprises, L.P. ("<u>Enterprises</u>") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 et seq.) (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

B.     Hoti Realty Management Co., Inc. ("<u>Management</u>") also filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Filing Date (Enterprises and Management will be referred to herein, collectively as "<u>Debtors</u>").

C.     Management and Enterprises have substantially similar ownership and management.  Enterprises' is owned by Victor Dedvukaj (10%), Gjelosh Dedvukaj (27.25%), Marash Dedvukaj (24.5%), Violeta Dedvukaj (14.5%), Maruka Dedvukaj (22.75%) and Management, Enterprises General Partner (1%).  Management is, in turn, owned 100% by Gjelosh Dedvukaj.

D. Enterprises is the owner of certain real property known as and located at 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue (also known collectively as 1865 Burnett Street) Brooklyn, New York (the "Property").

E. The Debtors, for themselves but not for their estates, and subject to paragraph 7 hereof, represent as follows:

(i) The Property is pledged as collateral to GECMC 2007-C1 Burnett Street, LLC ("Lender") pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated February 15, 2007 in the principal sum of $31,000,000 (the "Mortgage") which secures, among other things, payments due under an Amended, Restated and Consolidated Promissory Note with Enterprises as maker dated as of February 15, 2007, in the principal sum of $31,000,000 (the "Note"). Debtors acknowledge that this stipulation does not represent a commitment by Lender to waive or modify any of the terms of the loan documents executed in connection with the Note and Mortgage.

(ii) The Mortgage assigns to Lender all rents, royalties, issues, profits, bonus money, revenue, income rights and other benefits from the Property from time to time accruing (collectively, the "Rents" and together with the Property the "Collateral"). Additionally, Enterprises executed and delivered to Lender's predecessor in interest an Assignment of Leases and Rents dated February 15, 2007 (referenced at section 6.1 of the Mortgage), which was duly recorded in the Office of the Register of the City of New York Kings County on March 1, 2007 at CRFN 2007000112922, which was thereafter assigned by assignment dated February 15, 2007 and recorded on July 9, 2007 at CRFN 2007000348744, and was subsequently assigned to GECMC 2007-C1 Burnett Street via assignment dated February 6, 2009 and recorded on February 23, 2009 at CRFN 2009000051864 (collectively the "Assignment of Rents").

F. The Lender asserts that the Mortgage was duly recorded in the Office of the Register of the City of New York, Kings County on March 1, 2007, at CRFN 3007000112921, and constitutes a valid, binding, first priority, perfected and enforceable lien and security interest in and to the Collateral, including the Rents and Leases.

G. Management managed the Property for Enterprises until about May 12, 2009, and in that capacity entered into leases with the tenants at the Property ("Leases") as lessor, which

Leases, the Debtors agree, subject to paragraph 7 hereof, are part of Lender's Collateral pursuant to the terms of the Mortgage and Assignment of Rents.

H. Prior to the Petition Date on or around November 1, 2008, the Debtors defaulted on their obligations under the Mortgage, Note and related agreements (the "Loan Documents").

I. On or about February 27, 2009, Lender commenced an action to foreclose the Mortgage entitled *GECMC 2007-C1 Burnett Street, LLC. v. Hoti Enterprises, L.P., et al.* (N.Y. Supreme Court, Kings County, Index No. 5006/2009) (the "Foreclosure Action").

J. By Order dated March 16, 2009 in the Foreclosure Action, Barbara Odwak, Esq. was appointed receiver of the Property (the "Receiver"). The Receiver filed her oath and bond and took possession and control of the Property on or about May 12, 2009, and has collected rents and otherwise maintained the Property since that date. As of October 31, 2010, the Receiver was in possession of $998,552.61 in Rents.

K. Cash Collateral. The Rents are asserted by the Lender to be "cash collateral," as such term is defined in Section 363(a) of the Bankruptcy Code subject to the Lender's security interest. Lender is entitled to adequate protection for the use thereof to the extent of any post-Filing Date diminution of the Lender's interest therein (the "Diminution").

L. Debt. Lender contends that it holds a perfected valid first priority secured claim of not less than $38,283,942.22 as of November 11, 2009, which is not subject to defense, counterclaim or offset ("Secured Claim"), it being understood and agreed that nothing contained herein shall prejudice the right of Lender to claim that additional amounts are due and owing under Note, Mortgage and related loan documents.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Debtors and Lender, through their undersigned counsel, each of which are duly authorized to enter into this Stipulation and Order, as follows:

1.  <u>Continuation of Receivership:</u>  The Receiver shall be excused from compliance with section 543 of the Bankruptcy Code *nunc pro tunc* to the Filing Date.  The Receiver shall remain in possession and control of the Property, and shall continue to perform her duties and obligations as Receiver, as provided pursuant to that certain Order Appointing Receiver, entered on March 16, 2009 by the Supreme Court of the State of New York, Kings County, until this Court orders otherwise.  Debtors shall play no role and shall have no involvement in the management of the Property, including without limitation soliciting or responding to inquiries regarding vacancies, potential tenants or apartments to be rented, except the to extent that the Debtors' assistance is specifically requested by Lender, Receiver or the Receiver's management company.  The Debtors and their principals shall cooperate with the Receiver and her management company in the management and operation of the Property and shall provide all information and assistance in connection therewith as may be reasonably requested by the Receiver.

2.  <u>Turnover of Books and Records</u>.  The Debtors shall as promptly as practicable turn over to the Receiver all books and records relating to the Property, including but not limited to all bank statements for any and all bank accounts maintained by either Debtor at any time during 2008-2010, all files relating to existing tenants and leases relating to the Property, and all financial statements and records relating to the Property for the period from 2008-2010.  The Receiver shall maintain all books and records relating to the Property until further order of the Court.  The Debtors shall immediately take all reasonable actions (including, without limitation,

pursuant to subpoena) to obtain any and all books and records relating to the Property in the possession and control of a third party, including the Debtors' current and former accountants, consultants and advisors.

3.      <u>Acknowledgement of Debt</u>.  Upon expiration of the 90 day challenge period in paragraph 7 herein, and if the Debtors, or any other party authorized to act on behalf of the Debtors' estates, have not exercised their rights under said provision, the Debtors, for themselves and for their estates, acknowledge that Lender holds a perfected valid first priority secured claim in the amount of the Secured Claim, subject to section 506(a) of the Bankruptcy Code, which is not subject to defense, counterclaim or offset.  Nothing herein shall prejudice the right of Lender to claim that additional amounts are due and owing under the Note, Mortgage and related loan documents.

4.      Upon expiration of the 90 day challenge period in paragraph 7 herein, and if the Debtors, or any other party authorized to act on behalf of the Debtors' estates, have not exercised their rights under said provision, the Debtors, for themselves and for their estates, acknowledge that they have no claims, equitable or legal, of any nature, whether as offset or for affirmative recovery, against Lender, including under any theory of "lender liability" or otherwise.  To the extent any such claim exists it is hereby waived as of such date.

5.      Upon expiration of the 90 day challenge period in paragraph 7 herein, and if the Debtors, or any other party authorized to act on behalf of the Debtors' estates, have not exercised their rights under said provision, the Debtors, for themselves and for their estates, acknowledge that, as of the Filing Date, the Mortgage is a valid, binding, first priority, perfected and enforceable lien against the Property and that Lender holds a valid, binding, first priority,

perfected and enforceable lien and security interest in and to the Collateral, including the Rents and Leases.

6.    Upon expiration of the 90 day challenge period in paragraph 7 herein, and if the Debtors, or any other party authorized to act on behalf of the Debtors' estates, have not exercised their rights under said provision, the Debtors, for themselves and for their estates, agree that except as otherwise provided herein, subject to section 362(a) of the Bankruptcy Code, all of the non-financial terms and provisions of the loan documents with Lender are deemed to be valid, binding and enforceable against the Debtors as if same had been re-executed by the parties, subject to further Order of the Court.

7.    The representations, acknowledgments and findings contained in this Stipulation and Order are binding upon the Debtors, their estates and all parties in interest that might have the right to act on behalf of the Debtors' estates (including but not limited to any statutory committee appointed in these chapter 11 cases), and any application of Collateral under this Stipulation and Order shall be indefeasible, subject to reallocation under section 506(a) of the Bankruptcy Code, unless (a) an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Secured Claim, the Replacement Liens (defined below), or the liens securing the Secured Claim on the Collateral (the "Prepetition Liens") is properly commenced no later than ninety (90) days from the Filing Date, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date, the Secured Claim shall constitute an allowed claim for all purposes in the chapter 11 case and any subsequent chapter 7 case, the Replacement Liens and the Prepetition Liens shall be deemed legal, valid, binding and perfected, and the Secured Claim, the Replacement

Liens, and the Prepetition Liens shall not be subject to avoidance, or any other similar challenge, by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor(s) thereto, with the exception of a challenge based on the value of the Collateral. If any such proceeding or contested matter is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the Secured Claim, the Replacement Liens and the Prepetition Liens, as the case may be, but only with respect to, and to the extent of, the objections raised in such adversary proceeding or contested matter, and all other such matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever waived.

8.    This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under chapter 7 of the Bankruptcy Code.

9.    <u>Management Debtor Bound</u>. Subject to a challenge under paragraph 7 hereof by a party in interest, other than the Debtors, acting on behalf of the Debtors' estates, Management shall be treated as the "Mortgagor" within the terms of section 6.1 of the Mortgage for all Leases of any portion of the Property, and Management and Enterprises acknowledge that all Leases entered into by Management, heretofore related to the Property, are, and were at all times, subject to, and are Collateral under, the Mortgage and Assignment of Rents. All Leases entered into hereafter shall be in the name of Enterprises as lessor, for so long as Enterprises is the owner of the Property. Subject to the first sentence of this paragraph, Management agrees to be bound by the terms of the Mortgage and the Assignment of Rents, and shall be deemed an obligor under the Mortgage and Assignment of Rents.

10.    <u>Cash Collateral</u>. Subject to a challenge under paragraph 7 hereof by a party in interest, other than the Debtors, acting on behalf of the Debtors' estates, the Rents are "cash

EAST\43884286.8

collateral" as such term is defined in Section 363(a) of the Bankruptcy Code subject to the Lender's security interest.

11.     Use of Cash Collateral.  The Receiver consents to the jurisdiction of the Bankruptcy Court and further consents that all Rents and future Rents collected from any tenant(s) shall be deposited by the Receiver into the existing account maintained by Receiver (the "Cash Collateral Account") and may not be transferred to any other account except pursuant to this Stipulation and Order or further order of the Court, and all disbursements in respect of the subject Property shall be made exclusively from the Cash Collateral Account.

12.     Tenant Security Deposits.  Upon execution of this Stipulation and Order, Victor Dedvukaj shall deliver $100,000, in repayment of tenant security deposits used for other purposes pre-Filing Date by the Debtors and/or their principals, to the Receiver to be held in an interest bearing escrow account and to be used by the Receiver as appropriate to refund security deposits in accordance with applicable New York law regarding tenant security deposits and to reimburse the Receiver for tenant security deposits that were required to be paid from other sources following the appointment of the Receiver.  The Debtors acknowledge and agree that the repayment of such $100,000 reflects the fact that an amount of at least $100,000 previously paid to the Debtors by existing and/or former tenants of the Property in respect of security deposits was used pre-Filing Date by the Debtors and/or their principals and was not previously segregated as was required under applicable state law.  Such $100,000 payment shall not be deemed to be a loan to, or obligation or debt of, either Debtor, postpetition or otherwise, or a capital contribution to either Debtor, and no party shall be entitled to any lien or security interest against or interest in either of the Debtors, their assets or properties in respect thereof.

13. In addition to and not in lieu of the consents contained herein, Lender consents to the Receiver's use of the Rents in accordance with and only in accordance with (a) the terms of this paragraph 13, (b) the Receiver's budget attached hereto as Exhibit 1, and (c) such additional budgets as Lender may approve in its sole and absolute discretion (after consultation with the Receiver) in writing by an authorized representative of Lender, or Lender's Special Servicer, LNR Partners, Inc., and delivered to the Receiver or as the Court may determine is necessary to adequately protect Lender's interest in the Collateral.  Notwithstanding the foregoing, the Receiver may, in any month and for any line item on the budget except payroll, spend up to 10% over the budgeted amount, provided the total expenditures over the budgeted amounts shall not exceed 10% over the total budget.  Notwithstanding the foregoing, emergency capital repairs may be made by the Receiver without the approval of Lender in an amount up to $5,000 in any one instance and in an amount not to exceed $10,000 in the aggregate, if, in the reasonable judgment of the Receiver, failure to make such repairs relating to the Property would create an imminent safety hazard or is necessary to cure a material regulatory violation.  The budget shall include reserves for real estate tax and insurance premium escrows as appropriate to ensure the availability of sufficient funds when such taxes and premiums are due for payment.

14. <u>Adequate Protection</u>.  Receiver shall pay to Lender as adequate protection, (i) within three (3) days after entry of this Stipulation and Order, all Rents and other income that have been collected to date that are in excess of budgeted expenses for the current month plus reserves for certain expenses to be incurred, each as set forth in the attached budget for the month of December, 2010, and (ii) each month by the 7th day of such month, all Rents and other income received and collected as of the last business day of the prior month in excess of the budgeted expenses plus reserves for certain expenses to be incurred, each as set forth in the

budget for the month in which payment is to be made as approved by the Lender. Such payments shall be applied by the Lender to reduce the Secured Claim, subject to reallocation under section 506(a) of the Bankruptcy Code.

15.    As additional adequate protection for and to secure the payment of an amount equal to any Diminution resulting from (i) the use of the Collateral, including Rents, and (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Lender is granted (effective as of the date of this Stipulation and Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) (A) a first priority replacement security interest in and lien upon all pre and post-Filing Date assets of the Debtors (the "Replacement Liens") and (B) an allowed super-priority claim pursuant to section 507(b) of the Bankruptcy Code, superior to all other claims against the Debtors, including all administrative expense claims, with the exception of (i) the allowed unpaid claims of counsel for the Debtors duly retained in these chapter 11 cases for reasonable fees and expenses incurred prior to a termination of the use of Cash Collateral hereunder, solely to the extent set forth in the budget attached as Exhbit 1 hereto and allowed pursuant to sections 330 and 331 of the Bankruptcy Code, provided that the aggregate amount of such fees and expenses shall not exceed $50,000, and provided further that such fees and expenses were not incurred in connection with the investigation or prosecution of any objection to or claim or cause of action with respect to or against the Lender, the Secured Claim, or the priority, validity or extent of Lender's liens.; (ii) amounts due in respect of United States Trustee fees under 28 U.S.C. section 1930 and 31 U.S.C. section 3717 and (iii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $10,000, and all avoidance actions and rights under Chapter 5 of the Bankruptcy Code and the proceeds thereof. Lender expressly

*11/23/2010*

reserves its right to assert claims for the payment of additional sums, including interest calculated at any other applicable rates of interest, or any other basis, provided for in the Note, Mortgage, and other applicable loan documents, and Debtors reserve the right to contest such claims.

      16.    As further adequate protection of Lender's interest in the Collateral, the Receiver shall, as of the date of the execution of this agreement and at all times thereafter, maintain in full force and effect all insurance required by the Mortgage, including but not limited to the following:

      (a)    insurance against loss or damage to the Property by fire, windstorm, lighting, tornado and against loss and damage by such other additional risks as may now be or hereafter are embraced by an "all risk" insurance policy in an amount of not less than 100% of the full replacement cost (insurable value) of all structures, buildings and improvements of e very kind and description now or at any time hereafter located on the Property ("Improvements") (as established by an MAI appraisal), without reduction for depreciation. The maximum deductible shall be $10,000. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of any co-insurance provisions.

      (b)    Commercial General Liability Insurance for personal injury, bodily injury, death or property damage liability in amounts not less than $1,000,000 per occurrence and $2,000,000 in the aggregate, together with umbrella coverage in amounts not less than $5,000,000.

      (c)    Boiler and machinery insurance (including explosion coverage), if steam boilers or other pressure-fired vessels are in operation at the Property. Minimum liability coverage per accident must equal the greater of the replacement cost (insurable value) of the Improvements housing such boiler or pressure-fired machinery or $2,000,000. If one or more HVAC units is in operation at the Property, "Systems Breakdowns" coverage shall be required, as determined by Lender, with liability coverage per accident equal to the replacement value of such unit(s).

      (d)    If the Improvements or any part thereof is situated in a area designated by the Federal Emergency Management Agency ("FEMA") as a special flood hazard area (Zone A or Zone V), flood insurance in an amount equal to the lesser of: (a) the minimum amount required, under the terms of coverage, to compensate for any damage or loss on a replacement basis (or the unpaid balance of the Debt (as defined in the Mortgage) if replacement cost coverage is not available for the type of building insured), or (b) the maximum insurance available under appropriate National Flood Insurance Administration program, with a maximum

deductible of $10,000 per building or a higher minimum amount as required by FEMA or other applicable law.  Excess flood coverage shall be required to compensate for any damage or loss on a replacement basis (or the unpaid balance of the Note if replacement cost coverage is not available for the type of building insured), which excess flood coverage must include business income (loss of rents) insurance in amounts sufficient to compensate Debtors for all Rents from existing tenants as evidenced by the current rent roll for a period of twelve (12) months.

(e) During the period of any construction, renovation or alteration of the existing Improvements which exceeds the lesser of 10% of the principal amount of the Note or $500,000, at Lender's request, a completed value "All Risk" Builder's Risk form or "Course of Construction" insurance policy in non-reporting form, in an amount approved by Lender, may be required.

(f) Worker's Compensation and Employer's Liability Insurance covering all appropriate persons.

(g) Business income (loss of rents) insurance in amounts sufficient to compensate Debtors for the greater of (i) gross revenues for twelve (12) months, or (ii) twelve (12) months of operating expenses including debt service.  The amount of coverage shall be adjusted annually to reflect the Rents or income payable during the succeeding twelve (12) month period.

(h) Insurance coverage against loss or damage to persons and property by reason of any act of terrorism, to the extent such coverage is commercially available.

Each such policy required hereunder and pursuant to the Mortgage shall include a standard, non-contributory, mortgagee clause naming exactly:

> GECMC 2007-C1 Burnett Street, LLC
> c/o LNR Partners, Inc.
> 1601 Washington Avenue, Suite 700
> Miami Beach, Florida 22139

(i) as additional insured under all liability policies, (ii) as the first mortgagee and loss payee on all property insurance policies, and (iii) as the loss payee on all loss of rents and loss of business income insurance policies.

17. The Debtors' consensual use of Cash Collateral hereunder shall terminate in the event that the Debtors file any motion, proceeding or request for relief from the Court to:

(i) subordinate or "prime" the Secured Claim;

      (ii)    obtain debtor-in-possession financing, except in order to pay the Secured Claim in full;

      (iii)    seek a sale of the Property without providing Lender the right to credit bid;

      (iv)    reimpose or attempt to reimpose the requirements of section 543 of the Bankruptcy Code upon the Receiver; or

      (v)    seek use of the Rents.

    18.    <u>Termination of Stipulation and Order and Use of Cash Collateral.</u> Notwithstanding anything in this Stipulation and Order or in any budget to the contrary, (a) this Stipulation and Order shall terminate on January 10, 2011, unless terminated earlier by the Lender in accordance with the terms of this Stipulation and Order; provided, however, that this Stipulation and Order may be extended by written agreement of the Debtors and Lender; and (b) Lender shall have the right to immediately terminate, without notice to the Debtors or any official committee (the "<u>Committee</u>"), the use of Cash Collateral if:

      (i)    the Debtors default with respect to any of the terms or provisions of this Stipulation and Order, and fail to cure such default within five (5) calendar days after receiving written notice of default by Lender;

      (ii)    an order is entered appointing a chapter 11 trustee in these cases;

      (iii)    an order is entered dismissing the within cases or converting these cases to cases under chapter 7 of the Bankruptcy Code; or

      (iv)    either Debtor files a chapter 11 plan or requests authority to sell any of its assets which plan or sale has not been approved in all respects by the Lender.

The occurrence of any of the foregoing events of termination ("<u>Termination Events</u>") shall in no way prejudice, impair or otherwise adversely affect the validity, priority or enforceability of the

Lender's pre or post-Filing Date liens, and, notwithstanding such occurrence, all of the terms and provisions of this Stipulation and Order shall continue in full force and effect other than Lender's obligation to continue to permit use of Cash Collateral, which shall automatically cease on the occurrence of a Termination Event.  Anything in this paragraph to the contrary notwithstanding, Lender reserves the right, at any time, to file a motion, upon proper notice, seeking to terminate the use of Cash Collateral for any reason that Lender may deem proper cause.

19.     <u>Remedies Upon A Termination Event</u>.  In the event of a default hereunder or the occurrence of a Termination Event, in addition to the revocation of Lender's consent to the use of Cash Collateral pursuant to this Stipulation and Order, Lender shall be entitled to submit a declaration in further support of its pending motion to lift the automatic stay on three (3) business days' notice requesting that the automatic stay imposed by section 362 of the Bankruptcy Code be lifted, in order to exercise any and all of the remedies available to it under the Loan Documents, this Stipulation and Order, or applicable nonbankruptcy law, including, without limitation, the right to take possession of any or all of the Property, the right to remove any or all of the Property from the Debtors' premises, and the right to sell any or all of the Property at public or private sale; <u>provided</u>, however, that if the Debtors seek to prevent termination of the automatic stay, pursuant to an appropriate objection filed with the Court, the automatic stay shall continue in full force and effect until the Court's determination of the issue, including, if the Court does not issue an order terminating the automatic stay prior to a hearing, pending a hearing to determine that relief from the automatic stay is appropriate; <u>provided</u> further that the only issue at any such hearing will be the existence of a Termination Event. Anything in this paragraph to the contrary notwithstanding, Lender reserves the right, at any time, to file a motion, upon proper notice, seeking relief from the automatic stay for cause.

20. <u>Request for Adequate Protection Deemed Filed</u>. Lender shall be conclusively presumed to have filed requests for adequate protection as of the Petition Date.

21. <u>Time of the Essence</u>. Time shall be of the essence with respect to any dates or deadlines contained in this Stipulation.

22. <u>Relief from Stay</u>. Subject to paragraph 19 hereof, the automatic stay provided under section 362(a) of the Bankruptcy Code will be deemed modified to the extent necessary to permit Lender, or its agents, to do and take all actions provided for in, or contemplated by, the provisions of this Stipulation and Order, including, without limitation, the enforcement of its rights with respect to the Cash Collateral in accordance with the terms and provisions of this Stipulation and Order. Moreover, Lender reserves all its rights and remedies with respect to stay relief.

23. <u>Further Relief</u>. Nothing herein contained shall prejudice, impair or otherwise affect the right of Lender at any time to (i) object to the future use of Cash Collateral, including, but not limited to, on the grounds that its interests are not adequately protected, (ii) seek the appointment of a trustee or an examiner under section 1104 of the Bankruptcy Code, (iii) seek further relief from the automatic stay under section 362(d) of the Bankruptcy Code, (iv) seek dismissal of these cases or conversion of these cases to cases under Chapter 7 pursuant to section 1112 of the Bankruptcy Code, (v) file a plan of reorganization, (vi) seek adequate protection at any time, or (vii) seek any other appropriate relief. Moreover, nothing contained herein shall constitute a waiver of Lender's rights under or relative to the Loan Documents.

24. <u>506(c) Waiver</u>. Except as may be provided in the budget, no expenses of administration of the case or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be

charged pursuant to section 506(c) of the Bankruptcy Code or otherwise against the Collateral without the prior written consent of Lender, and no such consent shall be implied from any action, inaction, or acquiescence by Lender.

25.     The Debtors reserve the right to seek, upon notice and a hearing, to have the adequate protection payments made to the Lender hereunder recharacterized as payments on account of the principal amount of the Note and Mortgage outstanding as of the Petition Date in accordance with section 506(a) of the Bankruptcy Code.

26.     Each of the parties hereto acknowledges that it has read all of the terms of this Stipulation and Order and enters into those terms voluntarily and without duress.

27.     This Stipulation and Order is subject to the approval of the Bankruptcy Court and shall be of no force and effect unless and until the Stipulation has been "so ordered" by the Bankruptcy Court and entered.  If this Stipulation is not approved by the Bankruptcy Court, it shall be null and void and shall not be used or referred to in any litigation or other proceedings.

28.     This Stipulation and Order constitutes the entire agreement between the parties hereto and may only be modified in a writing signed by all of the parties hereto or their duly-appointed agents.

29.     This Stipulation and Order may be signed in facsimile or email/pdf counterparts, all of which when taken together will constitute one original document.

30.     This Stipulation and Order may not be amended or modified except by further Order of this Court.

31.     Notwithstanding anything herein to the contrary, nothing contained in this Stipulation and Order shall be construed to affect any party's lien priority and/or limit their right to challenge any lien priority granted herein.

EAST\43884286.8

*11/23/2010*

32. The terms and provisions of this Stipulation and Order shall be binding upon the parties, their successors and assigns, including any trustee appointed in these cases or in any chapter 7 cases to which the within cases are converted.

Agreed to this ___ day of December, 2010.

| HOTI ENTERPRISES, L.P. and HOTI REALTY MANAGEMENT CO. INC. | GECMC 2007-C1 BURNETT STREET, LLC |
|---|---|
| By its attorneys, | By its attorneys, |
| /s/ Robert L. Rattet | George B. South III |
| Robert L. Rattet | Thomas R. Califano |
| Arlene Gordon-Oliver | George B. South III |
| Rattet, Pasternak, Gordon-Oliver | Vincent J. Roldan |
| 500 Mamaroneck Avenue | Kerry Ford Cunningham |
| Harrison, NY 10528 | DLA Piper LLP (US) |
| Telephone: 914-381-7400 | 1251 Avenue of the Americas |
| Facsimile: 914-381-7406 | New York, NY 10022 |
| | Telephone: (212) 335-4500 |
| | Facsimile: (212) 335-4501 |

SO ORDERED

/s/Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

Dated: White Plains, New York
       December 22, 2010

17
- -

EAST\43884286.8

*11/23/2010*

EXHIBIT 1

EAST\43884286.8