RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

Robert L. Rattet
James B. Glucksman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re: : Chapter 11
:
HOTI ENTERPRISES, L.P. and :
HOTI REALTY MANAGEMENT CO., INC., : Lead Case No. 10-24129 (RDD)
:
     Debtors. :
--------------------------------------------------------------x

**APPLICATION IN SUPPORT OF
ORDER SCHEDULING EXAMINATION
<u>PURSUANT TO BANKRUPTCY RULE 2004</u>**

**TO: THE HONORABLE ROBERT D. DRAIN,
  UNITED STATES BANKRUPTCY JUDGE:**

   The application of the above captioned Debtors (the "<u>Debtors</u>"), by their attorneys, Rattet,

Pasternak & Gordon-Oliver, LLP, for an order authorizing the Debtor to conduct an examination of

GECMC 2007-C1 Burnett Street, LLC ( "<u>GECMC</u>") and LNR Partners, LLC pursuant to

Bankruptcy Rule 2004, respectfully sets forth as follows:

<u>**JURISDICTION**</u>

   1.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the District Court dated

July 10, 1984 (Ward, Acting C.J.). This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2).

   2.  Venue of this proceeding and the within application in this district is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested is Section 105 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 105 and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the ("Bankruptcy Rules").

## **BACKGROUND**

4.      On or about February 15, 2007 Hoti Enterprises, L.P. ("Enterprises") executed a certain Amended, Restated and Consolidated Mortgage and Security Agreement, in the principal sum of $31,000,000 (the "Mortgage"), which secures the Debtor's obligations under an Amended, Restated and Consolidated Promissory Note with Debtor Enterprises as maker dated as of February 15, 2007, in the principal sum of $31,000,000 (the "Note") in favor of Deutsche Bank Mortgage Capital, L.L.C. ("Deutsche").

5.      At some time unknown Deutsche assigned the Note and Mortgage to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-CI ("WF").

6.      According to the Assignment of Mortgage (the "Assignment") attached to GECMC 2007-CI Burnett Street, LLC's  ("GECMC") Motion to Excuse Compliance with 11 U.S.C. § 543 dated October 22, 2010 (the "Section 543 Motion"), WF's address had a mailing address c/o LNR Partners, Inc., 1601 Washington Avenue, Suite 800, Miami Beach, Florida 33139.

7.      On or about February 6, 2009 WF further assigned the Note and Mortgage to GECMC 2007-CI Burnett Street, LLC.

8.      According to the Assignment attached to the Section 543 Motion, GECMC has a mailing address c/o LNR Partners, Inc., 1601 Washington Avenue, Suite 700 (sic), Miami Beach, Florida 33139.

9.    October 12, 2010 (the "Filing Date) Enterprises filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 et seq.) (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

10.    Hoti Realty Management Co., Inc. ("Management") also filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Filing Date (Enterprises and Management will be referred to herein, collectively as "Debtors").

11.    The Debtors have the rights and duties as debtors-in possession pursuant to 11 U.S.C. §§ 1101, 1107(a) and 1108.

12.    No trustee, examiner or statutory committee has yet been appointed in these Chapter 11 cases.

13.    Enterprises is a closely held limited liability partnership which owns a residential apartment complex located at 2801 Fillmore Avenue, 3001 Avenue R and 2719 Fillmore Avenue (collectively, known as 1865 Burnett Street) Brooklyn, New York (the "Property").  Enterprises filed its Chapter 11 proceeding as a result of a pending foreclosure action and the appointment of a Receiver of Rents in a pending foreclosure action encaptioned, GECMC 2007-C1 Burnett Street, LLC v. Hoti Enterprises, L.P. currently pending in the Supreme Court of the State of New York, County of Kings, Index No. 5006/09 (the "Foreclosure Proceeding").

14.    Prior to the Filing Date and to the appointment of a Receiver of Rents in the pending foreclosure proceeding, Realty was in the business of owning and operating a management company that managed the apartment complex owed by Enterprises. Realty is also the general partner of Enterprises.

15.    Thereafter the instant proceedings were referred to Your Honor for administration

under the Code.

**RELIEF REQUESTED**

16.     Pursuant to 28 U.S.C. Section 1334(d) and the permanent order of reference of the United States District Court for the Southern District of New York issued pursuant to 28 U.S.C. §157, the Bankruptcy Court has exclusive jurisdiction of all of the property, wherever located, of the Debtors as of the commencement of the cases, and of property of the estates, as well as the determination and allowance of claims against the estates.

17.     The Debtors respectfully request that the Court direct an authorized and knowledgeable representative of LNR and GECMC to appear for examination under oath, and produce certain documents that will enable the Debtor to determine whether it would be in the best interests of their creditors and estates to negotiate a resolution of the money purportedly owed by the Debtors to either GECMC or the actual holders of interests in the Mortgage, which secures, among other things, payments due under the Note.

18.     Upon information and belief, LNR has been engaged by GECMC as special servicer of the Note and Mortgage, and has been making the decisions as to prosecution of both the pending foreclosure proceedings and these Chapter 11 cases.

19.     The Bankruptcy Court may direct the examination of any party pursuant to Fed.R.Bankr.P. 2004 (a), (b), and (c) which provides:

> (a) Examination on motion
>
> On motion of any party in interest, the court may order the examination of any entity.
>
> (b) Scope of examination
>
> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any

matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

(c) Compelling attendance and production of documents

The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

20.     An examination under Rule 2004 permits any party in interest to examine any entity concerning "any other matter relevant to the case or to the formulation of a plan". See Fed.R.Bankr.P. Rule  2004(b).

21.     This language has been interpreted as providing latitude to conduct discovery broader in scope than that provided for under the Federal Rules of Civil Procedure. *See,*  In re Ecam Publ., Inc., 131 B.R. at 559. In fact, the scope of a 2004 examination is so broad that it has been likened to a "fishing expedition." Id. at 559. Under this Rule, the Debtors are entitled to inspect and photocopy documents and papers in the possession, custody or control of GECMC. See Rule 2004 (c) ("The attendance of any entity for examination and the production of documentary evidence may .be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.")

22.      The Debtors desire to conduct an examination of GECMC pursuant to Bankruptcy Rule 2004 in order to determine if past restructuring or settlement proposals have in fact been relayed to the participants in the Note and Mortgage. Further, in order to formulate a Plan, the Debtors may desire to ensure that any economic proposal be evaluated by the participants in the Note and Mortgage, and not solely by LNR Partners, LLC, the special servicer of the Note and Mortgage.

23.      The Debtors have been advised that GECMC itself has numerous participants or alternatively that the Note and Mortgage themselves have numerous participants. In other words, the mortgage is, upon information, securitized. Upon further information and belief, this mortgage is Mortgage Number 23 in a pool of numerous mortgages. Mortgage Number 1, upon information and belief, previously encumbered 666 Fifth Avenue, New York, New York, Upon information, LNR received a fee for terminating their "fair market" purchase option with respect to their mortgage upon 666 Fifth Avenue, New York, New York.

24.      Further the Note and Mortgage's ownership have been transferred at least once between and among entities having LNR as the common servicer.

25.      Further, the Debtors are advised that GECMC has interests in notes and mortgages on other properties, and the LNR is special servicer for other properties.

26.      The potential exists that the economic stakeholders in the Note and Mortgage may not have been consulted with regard to any settlement or restructuring proposal, including prior proposals to satisfy the Note and Mortgage at discounted amounts.

27.      In this case there is a sharp disparity between the value of the property secured by Mortgage and the balance due on the Note.

28.      The Debtors believe that the interests of LNR as special servicer may materially

diverge from the interests of the stakeholders in GECMC, and that GECMC is in effect is a mere nominee for the real holders of interests. Upon information and belief, LNR has an option to purchase the mortgage at fair market value from GECMC, thus giving LNR a potential interest in causing the Premises' value to decrease.

29.     In order to facilitate true plan negotiations the Debtors seek the entry of an Order directing LNR and GECMC to provide documents and appear for examination under Fed.R.Bankr.P. Rule 2004. Annexed hereto as Exhibit "A" is a copy of the proposed subpoena for examination.

30.     This information has been sought from counsel to GECMC informally. Annexed hereto as Exhibit "B" is a copy of a letter dated December 21, 2010 requesting this information.

31.     GECMC's counsel responded by letter dated December 30, 2010, a copy of which is annexed hereto as Exhibit "C".

32.     This letter states "the Court has already dismissed your request for these same documents during the hearing held on December 20, 2010". The December 20, 2010 transcript, a copy of which is annexed hereto as Exhibit "D" makes crystal clear that the Court only was "dismissing" this request as it related to the use of cash collateral. The Court stated:

> And if the lender it appears to me is acting irrationally, which nothing in the record suggests today, then I may have some power to deal with them on that. But there's no sense of that today. And I'm not going to hold up their rights to have adequate protection of their cash collateral over some speculation about that they're acting irrationally when there's nothing to suggest that they are.

33.     The right to use cash collateral is a materially different right from the right to propos e a plan of reorganization.

34.     The Debtors are seeking to conduct a Rule 2004 examination in order to avoid the futility in proposing a plan that the economic stakeholders in the Note and Mortgage will never get to consider.

**WHEREFORE**, the Debtors respectfully pray for the relief requested in the within Application and pre-fixed Order, a copy of which is also annexed hereto as Exhibit "E", together with such other and further relief as is just, proper and equitable under the circumstances.

Dated: Harrison, New York
      January 5, 2011

                RATTET, PASTERNAK & GORDON-OLIVER, LLP
                Attorneys for the Debtor
                550 Mamaroneck Avenue
                Harrison, New York 10528
                (914) 381-7400

                By: */s/ Robert L. Rattet*
                    Robert L. Rattet

**EXHIBIT "A"**

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

Robert L. Rattet
James B. Glucksman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                    :          Chapter 11
                                                          :
HOTI ENTERPRISES, L.P. and                                :
HOTI REALTY MANAGEMENT CO., INC.,                         :          Lead Case No. 10-24129 (RDD)
                                                          :
                                    Debtors.              :
-------------------------------------------------------------x

# RULE 2004 SUBPOENA

**TO:    GECMC 2007-C1 Burnett Street, LLC
          LNR Partners, LLC**


☒       YOU ARE COMMANDED to appear pursuant to Rule 2004, Fed. R. Bankr.P., at the
place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE: <br> Rattet, Pasternak & Gordon-Oliver, LLP <br> 550 Mamaroneck Avenue, Suite 510 <br> Harrison, New York 10528 | DATE AND TIME: <br><br> January ___, 2011 at 10:00 a.m. |
|---|---|

☒       YOU ARE COMMANDED to produce for inspection and turnover the following
documents or objects at the place, date and time specified below as provided on the attached
Schedule "A".

| PLACE: <br> Rattet, Pasternak & Gordon-Oliver, LLP <br> 550 Mamaroneck Avenue, Suite 510 <br> Harrison, New York 10528 | DATE AND TIME: <br><br> January ____, 2011 at 10:00 a.m. |
|---|---|

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER |
|---|
| <br><br> |

Robert L. Rattet, Esq., Rattet, Pasternak & Gordon-Oliver, LLP, 550 Mamaroneck Avenue, Harrison, NY 10528 (914) 381-7400

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
　　　　　　　　　DATE                                        SIGNATURE OF SERVER


　　　　　　　　　　　　　　　　　　　　　　　_____
                                         ADDRESS OF SERVER

                                         _____

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable to cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

　(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

　(2)(A)A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of

2

production or inspection unless commanded to appear for deposition, hearing or trial.

(B)Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving, the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying

commanded.

(3)(A)On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert 's opinion or information not describing specific events or occurrences in dispute and resulting from the expert 's study made not at the request of any party, or

(iii)requires a person who is not a party or an officer of a patty to incur substantial expense to travel mere that 100 miles to attend trial, the court may, to protect a person subject to or affected by the

subpoena, quash or modify the subpoena or, if the patty in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may

order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**Exhibit A**

**Debtors' Requests for Production of
Documents to GECMC 2007-C1 Burnett Street, LLC
(the "<u>Bank</u>") and LNR Partners, LLC**

**DEFINITIONS**

1.        As used herein, the term "All" shall be construed as "all" and "each."

2.        As used herein, the term "Chapter 11 Cases" means the jointly administered Chapter 11 cases of the Debtors encaptioned Hoti Enterprises, L.P. and Hoti Realty Management Co., Inc., Lead Case No. 10-24129 (RDD), which are currently pending before the United States Bankruptcy Court for the Southern District of New York.

3.        As used herein, the term "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

4.        As used herein, the term "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any Documents, telephone conversations, discussions, meetings, facsimiles, emails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

5.        As used herein, the terms "Concerning," "Constituting," "Referring to" or "Relating to" shall mean relating to, constituting, concerning, referring to, regarding, bearing upon, supporting or negating, summarizing, pertaining to, alluding to, commenting upon, touching upon, recording, consisting of, affecting, reflecting, discussing, describing, evidencing, mentioning or having any logical or factual connection with the matter in question.

6.        As used herein, the term "Debtors" means, collectively, Hoti Enterprises, L.P. and Hoti Realty Management Co., Inc., including, as applicable, their respective affiliates,

parents, subsidiaries, predecessors, members, employees, agents, attorneys, investigators,

experts, professionals, officers, directors, representatives, and anyone acting on their behalf.

7.     As used herein, the term "Document" is to be construed in the broadest possible

sense as specified in and interpreted under Rule 34 of the Federal Rules of Civil Procedure, and

includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any

written, graphic or otherwise recorded matter, however produced, reproduced, or stored, and all

"writings" as defined in Rule 1001 of the Federal Rules of Evidence, and all other tangible things

by which human communication is transmitted or stored, meaning any kind of printed,

electronic, recorded, graphic, or photographic matter, however printed, produced, reproduced,

copies, reproductions, facsimiles, drafts and both sides thereof, including without limitation any

kind of written, typewritten, graphic, photographic, printed, taped or recorded material

whatsoever, regardless whether the same is an original, a copy, a reproduction, a facsimile, telex

or telefax, and regardless of the source or author thereof, including without limitation, any

writing filed for reporting or other purposes with any state, federal or local agency; notes;

memoranda, including but not limited to memoranda of telephone conversations; letters; audited

financial statements; unaudited financial statements; financial ledgers; intra-office or inter-office

communications; circulars; bulletins; manuals; results of investigations; progress reports; study

made by or for business or personal use; financial reports and data of any kind; working papers;

contracts; agreements; affidavits; declarations; statements; bills; books of accounts; vouchers;

transcriptions of conversations or tape recordings; desk calendars; bank checks; purchase orders;

invoices; charge slips; receipts; expense accounts; statistical records; cost sheets; journals;

diaries; time sheets or logs; computer data; job or transaction files; appointment books; books,

records, and copies; electronic mail messages; extracts and summaries of other documents; drafts

of any of the above, whether used or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

8.	As used herein, the term "Each" shall be construed as "all" and "each."

9.	As used herein, the term "Electronically Stored Information" or "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information storing electronic devices of You

and Your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in Your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by Your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of email sent to distribution lists, information on the membership of such lists at the time the e-mail was sent.

10.     As used herein, the term the "GECMC" shall refer to GECMC 2007-C1 Burnett Street, LLC.

11.     As used herein, the term "Identify," when used in reference to a Document shall mean to state: its (i) author(s), recipient(s) and addressee(s); (ii) date; (iii) general subject matter; (iv) current or last known location; and (v) current or last known custodian; and (vi) format.

12.     As used herein, the term "LNR" shall mean LNR Partners, LLC.

13.     As used herein, the term "Loan" shall mean the transaction referenced in the Mortgage and Note.

14.     As used herein, the term "Mortgage" shall mean a certain Amended, Restated and Consolidated Mortgage and Security Agreement, in the principal sum of $31,000,000 which secures, among other things, payments due under the Note.

15.     As used herein, the term "Note" shall mean a certain Amended, Restated and Consolidated Promissory Note with Debtor Enterprises as maker dated as of February 15, 2007, in the principal sum of $31,000,000.

16.     As used herein, the term "Person" is defined as all natural individuals, corporations, partnerships, or other business associations, and all legal entities.

17.     As used herein, the term "Petition Date" shall mean and refer to October 12, 2010.

18.     As used herein, the terms "You" or "Your" shall mean and refer to the GECMCand LNR, including, but not limited to, his current and former employees, agents, attorneys representatives and/or affiliates, and any of their respective current and former employees, agents, attorneys successors and/or representatives.

**INSTRUCTIONS**

A.     You are required to conduct a thorough investigation and produce all Documents in Your possession, custody, and control including all Documents in the possession, custody and control of Your attorneys, investigators, experts, officers, directors, employees, agents, representatives, and anyone acting on Your behalf.

B.     No later than twenty-eight (28) days after service of this Subpoena You are required to serve a written response to the Request in compliance with Federal Rule of Civil Procedure 45. The response shall state, with respect to each category below, that the document production will occur requested unless a particular Request is objected to, in which event the

reasons for the objection shall be stated. If objection is made to a part of an item or category, that part shall be specified and inspection permitted of the remaining parts.

C.      The use of the singular form of any word includes the plural, and vice versa.

D.      The connectives "and," and "or," shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

E.      If You are unable to comply with a particular category(ies) of the requests below and Documents responsive to the category are in existence, Identify the following information:

(1) The date of the Document;

(2) The type of Document *(e.g.* letter, memorandum, report, etc.);

(3) The general subject matter of the Document;

(4) The name, address, telephone number and title of the author(s) of the Document;

(5) The name, address, telephone number and title of each recipient and/or addressee of the Document;

(6) The number of pages in the Document;

(7) The document control number, if any;

(8) The present location(s) of the Document and the name, address and telephone number of the person(s) who has (have) possession of the Document;

(9) A specific description of the subject matter of the Document;

(10)       The reason why the Document cannot be produced or why you are unable to comply with the particular category of request.

F.      You are under a continuing duty to seasonably amend. Your written response and to produce additional Documents if You learn that the response is in some material respect

incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the Examiner during the discovery process or in writing.

G.       You are required to produce the full and complete originals, or copies if the originals are unavailable, of each Document responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. Copies may be produced in lieu of originals if the entirety (front and back where appropriate) of the Document is reproduced and the Responding Party or its authorized agent or representative states by declaration or affidavit under penalty of perjury that the copies provided are true, correct, complete, and an accurate duplication of the original(s ).

H.       You are required to produce the Documents as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.

I.       You are required to produce Electronically Stored Information in searchable form on DVDs, CD-ROMs, or any other medium that is acceptable to counsel to the Examiner. If necessary, all Electronically Stored Information shall be translated before production into reasonably usable form.

J.        If You withhold or redact a portion of any Document under a claim of privilege or other protection, each such Document must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged Documents responsive to this Request for Production, and which privilege log shall Identify the following information:

          (1)  The date of the Document;

          (2) The type of Document (~, letter, memorandum, report, etc.);

          (3) The general subject matter of the Document;

(4) The name, address, telephone number and title of the author(s) of the Document;

(5) The name, address, telephone number and title of each recipient and/or addressee of the Document;

(6) The number of pages in the Document;

(7) The document control number, if any;

(8) The present location(s) of the Document and the name, address and telephone number of the person(s) who has (have) possession of the Document;

(9) A general description of the subject matter of the Document or the portion redacted without disclosing the asserted privileged or protected communication;

(10) The specific privilege(s) or protection(s) that you contend applies.

K.      Requests relating to any Person shall include such Person's employees, agents, attorneys, investigators, experts, professionals, officers, directors, representatives, and anyone acting on such Person's behalf.

L.      In producing Documents you are requested to produce the original of each

M.      Document requested together with all non-identical copies and drafts of that Document.

N.      Any and all comments, notes or signatures appearing on any Document, and not a part of the original, are to be considered a separate Document, and all drafts, preliminary forms or superseded versions of any Document are also to be considered a separate Document.

O.      Any and all Documents should be produced in the file, folder, envelope or other container in which the Documents are kept or maintained. If for any reason the container cannot

be produced, please produce copies of all labels or other identifying markings. Documents attached to each other must not be separated.

P. Unless specified otherwise, the relevant time period for each of the Requests shall be May 23, 2004 to the date upon which You produce documents responsive to these requests.

Q. All Documents and things responsive to this Subpoena shall be mailed or delivered to Rattet Pasternak & Gordon-Oliver, LLP, 550 Mamaroneck Avenue, Harrison, New York 10528, Attn: Robert L. Rattet, Esq., so that they are received no later than the production date set forth on the attached subpoena.

## DOCUMENTS REQUESTED

A. General

1. All documents identifying the names and addresses of the participants in the Loan, or alternatively that the special purpose entity that owns the Loan, and its investors or participants.

2. The Operating Agreement of the Bank.

3. Any and all agreements between any member of the GECMC and GECMC and/or LNR.

4. Any and all documents evidencing transfers of interests among current and/or former participants in the Loan and/or membership interests in the Bank.

5. Any and all documents showing participation in the Loan.

6. All agreements between GECMC and LNR, including but not limited to option agreements.

7. Any agreements between any members of GECMC and GECMC and/or LNR.

**B. Communications**

8.      All Documents Constituting, Reflecting or Concerning Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any communication with or about the Debtors with any entity.

9.      All Documents Constituting, Reflecting or Concerning Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any third party.

10.      Documents Constituting Concerning or Reflecting Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any current or former employee of any of the Listed Entities.

**C. Security Interests**

11.      All Documents Concerning, Constituting or Reflecting any ownership or security interest You assert in any property of the Debtors or property in the possession, custody or control of the Debtors.

**D. Claims**

12.      All Documents Concerning, or Reflecting any Claims You have asserted or may assert against the Debtors or property of the Debtors.

**EXHIBIT "B"**

# Rattet, Pasternak & Gordon-Oliver, LLP

**A LIMITED LIABILITY PARTNERSHIP**

## Attorneys at Law

| | |
|---|---|
| *550 Mamaroneck Avenue*<br>*Harrison, New York 10528*<br>*(914) 381-7400*<br>*Fax: (914) 381-7406*<br>*www.rattetlaw.com* | **NY OFFICE**<br>*295 Madison Avenue, 19th Floor*<br>*New York, New York 10017*<br>*(212) 677-6900*<br>**PLEASE REPLY TO HARRISON OFFICE** |

*Via EMAIL*
*And First Class Mail*

December 21, 2010

Vincent J. Roldan, Esq.
Kerry F. Cunningham, Esq.
George B. South III, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104

**Re: Hoti Enterprises, LP and**
**Hoti Realty Management Co., Inc.**

Dear Mssr. Roldan, Cunningham & South:

I am writing in connection with the above-referenced Chapter 11 proceeding.

I am advised that your client, GECMC 2007 C-1 Burnett Street, LLC (the "Lender") in fact consists of numerous participants, and that you have been engaged by the servicing agent for the loan to our client (the "Loan"), and/or the special purpose entity that owns the Loan.. We believe that the above-referenced loan has been securitized and that your direct client, LNR Partners, LLC, the special servicer, does not wholly own said Loan.

Thus, in order to further settlement offers and discussions, I am asking that you provide me with the following:

1) Names and addresses of the participants in the Loan, or alternatively that the special purpose entity that owns the Loan,

2) Names and addresses of any counsel whom you are aware of representing said

*Rattet, Pasternak & Gordon-Oliver, LLP*

Vincent J. Roldan, Esq.
Kerry F. Cunningham, Esq.
George B. South III, Esq.
DLA Piper LLP (US)
December 21, 2010
Page -2-

participants in the Loan;

3) Any agreements between the Lender and LNR Partners, LLC, and

4) Any documents, including participation or sharing agreements, and/or powers of attorney, that give or purport to give the party you are representing in Bankruptcy Court the right to act on behalf of the actual owners or investors in said loan to our client,

Thank you for your anticipated cooperation in this matter.

Very truly yours,

Robert L. Rattet

cc: Hoti Enterprises, LP and
   Hoti Realty Management Co., Inc.
   c/o Victor Dedvukaj

**EXHIBIT "C"**



**DLA Piper** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Vincent J. Roldan
vincent.roldan@dlapiper.com
**T** 212.335.4569
**F** 212.884.8569

December 30, 2010

*VIA E-MAIL AND OVERNIGHT DELIVERY*

Robert L. Rattet, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue  Suite 510
Harrison, NY 10528

**Re:  Hoti Enterprises, LP, et al., Case No. 10-24129**

Dear Mr. Rattet:

We are writing in response to your letter dated December 21, 2010 in the above-referenced cases in which you ask for certain documents relating to the loan (the "Loan") between GECMC 2007 C-1 Burnett Street, LLC ("Lender") and Hoti Enterprises, LP ("Hoti").

We note that none of the documents you requested in your December 21 letter relate to the extent or validity of Lender's claims and liens, but rather relate to the relationship between the Lender and servicer of the Loan. As we have stated in court and in pleadings, LNR Partners LLC, successor to LNR Partners, Inc. ("LNR"), is the manager of Lender as well as the special servicer of the Loan, and has full authority to act on all matters relating to the Loan in these bankruptcy cases. The request for documents contained in your letter is overbroad and unduly burdensome and the documents requested are irrelevant to these bankruptcy cases. Moreover, documents responsive to your request are publicly available and can be obtained by your office without requiring our client to produce these documents. In addition, the Court has already dismissed your request for these same documents during the hearing held on December 20, 2010. Therefore we decline to produce the documents requested in your December 21 letter.



Finally, we note that to date neither you nor your client has made any proposal with respect to the Loan, or proposed any chapter 11 plan in these cases. Nevertheless, the Lender will duly consider any proposal offered by Hoti but reserves all of its rights under the Bankruptcy Code and the cash collateral order entered in these cases.

Very truly yours,

Vincent J. Roldan

VJR:mm

Cc:     Mr. Whitney Wheeler
        George B. South III, Esq.

EAST\44011914.3

**EXHIBIT "D"**

```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3     ------------------------------------X
       In Re:                             :   10-24129
 4                                         :
          HOTI ENTERPRISES, LP,           :   One Bowling Green
 5                                         :   New York, New York
                                           :
 6                    Debtor.              :
                                           :   December 20, 2010
 7     ------------------------------------X

 8
            TRANSCRIPT OF MOTION TO APPROVE USE OF CASH COLLATERAL
 9            AND TO PROVIDE ADEQUATE PROTECTION THEREFOR
                  BEFORE THE HONORABLE ROBERT D. DRAIN
10                 UNITED STATES BANKRUPTCY JUDGE

11
       APPEARANCES:
12
       For Debtor:                ROBERT L. RATTET, ESQ.
13                                 Rattet, Pasternak & Gordon-Oliver, LLP
                                   550 Mamaroneck Avenue
14                                 Harrison, New York 10528

15     For GECMC 2007-C1          GEORGE B. SOUTH III, ESQ.
       Burnett Street, LLC:       DLA Piper LLP (US)
16                                 1251 Avenue of the Americas
                                   New York, New York 10020-1104
17
       For U.S. Trustee:          NAZAR KHODOROVSKY, ESQ. (Telephonic)
18                                 Office of the United States Trustee
                                   33 Whitehall Street, 21st Floor
19                                 New York, New York 10004

20
       Court Transcriber:         SALLY REIDY
21                                 TypeWrite Word Processing Service
                                   211 N. Milton Road
22                                 Saratoga Springs, New York  12866

23

24

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service
```

1  (Proceedings began at 10:10 a.m.)

2        THE COURT:  Hoti Enterprises and Hoti Realty

3  Management.

4        MR. KHODOROVSKY:  Again, Your Honor, may it please

5  the Court, Nazar Khodorovsky for the U.S. Trustee.

6        THE COURT:  Okay.  Morning.

7        MR. SOUTH:  Morning, Your Honor.  George South, DLA

8  Piper.

9        THE COURT:  Morning.

10        MR. SOUTH:  And --

11        MR. RATTET:  Good morning, Your Honor.  Robert

12  Rattet, Rattet, Pasternak & Gordon-Oliver, for Hoti.

13        THE COURT:  Okay.

14        MR. RATTET:  To my right is Victor Debvukaj.

15        MR. DEBVUKAJ:  And my father, Gjelosh Debvukaj.

16        THE COURT:  Okay.  So we were last here November

17  22nd.  I suggested you all work out a cash collateral

18  stipulation.  And Ms. Gordon-Oliver, I think you were here, Mr.

19  Rattet, but Ms. Gordon-Oliver was doing the talking, said that

20  there was an agreement in principal on it.

21        MR. RATTET:  Yes.

22        THE COURT:  And I got a draft, a corrected draft with

23  a budget I guess last week.  But where do we stand at this

24  point?

25        MR. RATTET:  My clients are -- have difficulty with

1  the budget that's attached.  And as of this morning or

2  yesterday actually I have an ancillary problem to this

3  proceeding as well and I need to make an inquiry or request the

4  Court to make an inquiry for me.  There -- and it relates to

5  the budgetary issues indirectly.  I don't know, this Court may

6  not be aware of a recent decision called <u>Silar Advisors</u> in

7  Northern District of Nevada.

8           THE COURT:  No.

9           MR. RATTET:  Simply put, Silar is a, was a servicer

10  for mortgages and it's a servicing problem.  They purchased

11  from a bankruptcy court the right to service certain mortgages,

12  so they're a transferee of the servicing package only.  The

13  owners of the mortgage, the mortgagors, the principals who

14  owned the mortgage are a group of investors and they sued Silar

15  because of their -- Silar was refusing to negotiate with the

16  principals of the property that was mortgaged.  And Silar lost.

17  Okay?  For failure -- for breach of fiduciary duty.

18           I have not had the decision, it's being pulled as we

19  speak right now.  What it amount -- and it appears in Sunday's

20  Business in the <u>New York Times</u>, you know, how recent the

21  decision is.  And if the Court wishes I'll leave a copy with

22  the Court.  It points out that there's competing -- and I know

23  <u>Silar</u> because before they filed for bankruptcy for Chapter 11

24  in Southern District they -- we were one of the firms that were

25  interviewed.  They ended up filing a Chapter 11 and having it

moved to Nevada so that I'm familiar with the underlying facts

and circumstances.

What it points out to is that there's a conflicting

issue between mortgage servicers and the principal holders of

the mortgage.  And that especially in a bankruptcy where the

property is undersecured and you're paying cash collateral, who

gets the cash collateral issues and what is the duty to

maintain the collateral, which ironically is the problem here.

The principals of Hoti have reviewed the budget and find the

budget is inadequate for providing and maintaining services and

re-letting the properties itself.  And point out to the Court

that five days ago, within the last five days they became aware

because of a phone call from Housing Preservation and

Development of the City of New York of a failure to maintain

heat and hot water in at least one unit.  We don't know if

there are any other complaints but we have become cognizant of

the fact that that has been -- that has occurred.

We also don't know right -- whether GEC -- let me get

the right -- it's GECC 2007- -- GECMC 2007-C1 Burnett Street

LLC is a servicer, if DLA Piper represents the servicer or the

mortgage holder.  And to that extent it has become relevant

because of <u>Silar</u>.  Because --

THE COURT:  Well, let's leave <u>Silar</u> aside for the

moment. What portion of the budget and in what amount is

inadequate?

1        MR. RATTET:  We believe that the budget dealing with

2   maintenance of the property, including snow removal and for

3   paying of utilities, in particular payroll -- not payroll,

4   petroleum, fuel, et cetera is inadequate.  We've already

5   started a very cold winter.

6        THE COURT:  Well, has this been discussed with the

7   receiver or the managing agent?

8        MR. RATTET:  We were told to stay away, don't make

9   any phone calls.  So we have stayed away.  And yet we're

10  concerned --

11       MR. SOUTH:  Counsel has not even addressed it with

12  counsel for L&R (Ph.).  This is the first we're hearing about

13  any discrepancy with the budget.  And I would point out, Your

14  Honor, also that this is not in a vacuum that this budget is

15  created.  This is based upon 18 months --

16       THE COURT:  They've been renting the property for a

17  year and a half.

18       MR. SOUTH:  You're right.  That's correct, Your

19  Honor.  And at no time has counsel at least heard that this

20  complaint exists.  I read in the papers that were filed in

21  connection with the various motions, the lift stay and the

22  like, that there was a complaint about snow removal, and I

23  think we addressed that in our papers, in the responsive

24  papers.  In addition, I would just add that the recent

25  complaints about the heat, it was regarding one unit.  We've

1   asked the receiver about that, and they told us there was a

2   problem with the boiler, that the heat -- that it was not

3   generating enough heat for one apartment and it was remedied.

4   So that's been addressed.

5           THE COURT:  Okay.

6           MR. SOUTH:  Did you want to -- my client, with the

7   Court's permission, would like to address the Court.

8           THE COURT:  Court.

9           MR. DEBVUKAJ:  Your Honor, I'd like to show you a

10  document.

11          THE COURT:  What is it?

12          MR. RATTET:  It's a stipulation and order that was

13  prepared.

14          MR. DEBVUKAJ:  It was a stipulation that was prepared

15  previously before I entered into bankruptcy and the bank had

16  agreed to put me in as management.  And I was putting together

17  the funds for the bankruptcy, and, you know, it took some time

18  for me to put the funds together.  But they agreed to put me in

19  as management, and I don't understand why they won't allow me

20  to go into management with this current stipulation.  It's line

21  item D, which states here that the debtor will resume their

22  business and managing their property as debtor.  And the reason

23  they had put that in was because they realized that I managed

24  the property correctly and the receiver diminished the value of

25  the property.  So I don't know why they won't entertain us as

1  management with this stipulation.  It's only a couple months

2  away.  It was in September actually.

3          THE COURT:  Who were you dealing with at that time?

4          MR. RATTET:  They were dealing through us, and we

5  were dealing with DLA Piper.

6          THE COURT:  Okay.

7          MR. RATTET:  And they withdrew from the stipulation

8  prior to filing.

9          THE COURT:  Okay.  I don't really -- it's really a

10 different issue, right, than the budget issue?

11         MR. RATTET:  Well, the budget was anci -- was part of

12 this problem.  But I disclosed that.

13         MR. DEBVUKAJ:  It's the same thing that was revised.

14 It's just they left item D out.

15         THE COURT:  And what was item D?

16         MR. DEBVUKAJ:  Item D, pursuant to the terms of the

17 stipulation order of § 107 and 108 of the Bankruptcy Code, the

18 debtor will resume operating their business and managing their

19 properties as debtor in possession.

20         THE COURT:  So is the budget essentially the same

21 except for management amount?

22         MR. DEBVUKAJ:  Well, we would manage the property.

23         THE COURT:  But was the budget for that stipulation

24 essentially the same as this budget?

25         MR. DEBVUKAJ:  I don't -- the winter -- it wasn't the

1  winter months.

2         THE COURT:  Okay.  But otherwise the expenses were

3  the same?

4         MR. DEBVUKAJ:  It was pretty much similar.

5         THE COURT:  Okay.  So what are we talking about here,

6  Mr. Rattet?  I mean your client agreed to a budget that was the

7  same except for the winter months, and there's a $5,000-a-month

8  contingency here plus a 10% variance.

9         MR. RATTET:  Your Honor --

10         THE COURT:  I don't see what -- I mean it seems to me

11  the debtor's upset because he's not managing the property, but

12  that's pretty much the bank's call.  I mean this property is

13  less than half secured at this point.  They're owed more than

14  twice the amount the property's worth.  It's their building.

15  It's only their right to -- it's up to them to decide whether

16  you all can get your act together to make a better deal or your

17  right to come up with new money to fund a plan.  And that time

18  is running fast, it's over January 12th.  So I don't see why

19  we're going through this charade at this point.

20         MR. RATTET:  Your Honor, I understand that.  But I

21  think there's still, there should be an inquiry, at least I

22  would ask the Court to make an inquiry as to whether GE -- I

23  can't ever, I keep forgetting it -- GECMC 2007 is in fact a

24  servicer or a mortgagee.

25         THE COURT:  Well, the servicer is the agent for the

1  mortgage holder.

2        MR. RATTET:  Unless they're acting -- there's an

3  inconsistency between the two.

4        THE COURT:  That's between them.

5        MR. RATTET:  Well.

6        THE COURT:  I don't -- look, is there --

7        MR. SOUTH:  Your Honor, my understanding is --

8        THE COURT:  -- anything you have to say about this

9  point?

10        MR. SOUTH:  -- L&R's the servicer, the acting agent

11  for the underlying lender mortgagor.  Or mortgagee.

12        THE COURT:  Is this a securitized facility?  Are

13  there other buildings in this facility?

14        MR. SOUTH:  I don't know -- I don't believe they are.

15  I think in this -- this lender, this entity is the owner of

16  this loan.  I don't know that there are -- Your Honor, I'm not

17  sure.

18        THE COURT:  Okay.

19        MR. SOUTH:  To be perfectly honest, I'm not sure --

20        MR. RATTET:  See, Your Honor, it --

21        MR. SOUTH:  -- whether there are additional -- it's a

22  trust entity, I suppose, which L&R is servicing that entity.

23        MR. RATTET:  You see, Your Honor, if L&R is the

24  servicer, okay, and they have only a vested interest in

25  collecting the service interest.  They don't have any interest

1  in making the --

2          THE COURT:  How do you know that?

3          MR. RATTET:  Well, if it's a normal servicing -- I

4  don't know, that's why I'm making inquiry.

5          THE COURT:  You don't know that.  I just -- you know,

6  that's not -- I just don't -- I mean -- is there any sense

7  here, I don't have it at least, that the debtor is being

8  rebuffed in respect of legitimate proposals in respect of this

9  property, i.e. the servicer is turning down legitimate

10  proposals in respect of the property reflective of the

11  property's true value?

12          MR. RATTET:  We've made an offer for the property

13  that approaches current market value of the property and it has

14  been turned aside.

15          THE COURT:  Well, a cash --

16          MR. RATTET:  But I'll renew that of course.

17          THE COURT:  -- value cash price to pay it?

18          MR. RATTET:  Cash price.

19          MR. SOUTH:  That's news to me.  Maybe you'd like to

20  describe the particulars of the offer?

21          MR. RATTET:  I believe there was an offer of $16.5

22  million.

23          MR. DEBVUKAJ:  (Indiscernible).

24          MR. RATTET:  What?

25          MR. DEBVUKAJ:  Well, we had --

1       THE COURT:  It certainly wasn't in the papers that I

2  read before the November 22nd hearing.

3       MR. DEBVUKAJ:  It was 14 million 250.  We brought an

4  investor in, an all-cash offer.  And I've been showing the

5  property to various investors, and the question that comes up

6  is why are there so many vacant apartments and I'm trying to

7  explain to them why.  And we feel we're going to come in with

8  an offer this week, which we have two investors that are coming

9  in at $16.5 million.

10       THE COURT:  Right, that's the whole point of why you

11  do a cash collateral stipulation so that you can get to the

12  point where you make those offers.  I don't understand why

13  we're fighting a simple cash collateral stipulation.

14       MR. RATTET:  Your Honor, I --

15       MR. DEBVUKAJ:  It would -- Your Honor, it would help

16  me if I was managing the property, leasing up the units, and

17  showing investors --

18       THE COURT:  That's not going to happen.

19       MR. DEBVUKAJ:  Okay.

20       THE COURT:  I'm sorry, I'm not going to do that.

21       MR. DEBVUKAJ:  Okay.

22       THE COURT:  I don't believe that the record requires

23  me or, I'm sorry, requires the lender to accept that.  I'm not

24  going to have a changeover of what's been going on for 18

25  months.  Particularly given the lack I believe of cooperation

1   during the bankruptcy case on the leases.  It's just -- I'm not
2   going to do it.

3              MR. RATTET:  Thank you, Your Honor.

4              THE COURT:  Particularly given the amounts that
5   apparently were paid during the time that management was
6   managing the property.  It's just -- again this building is, by
7   the debtor's own statements, worth less than half of what the
8   lender is owed.  Under those circumstances the lender really
9   has the primary say on what to do with it.  If you could use
10  the Bankruptcy Code, as Mr. Rattet has used the Bankruptcy Code
11  countless times, to buy some time to find a buyer for the
12  property at a fair price, then you could do that.  And if the
13  lender it appears to me is acting irrationally, which nothing
14  in the record suggests today, then I may have some power to
15  deal with them on that.  But there's no sense of that today.
16  And I'm not going to hold up their rights to have adequate
17  protection of their cash collateral over some speculation about
18  that they're acting irrationally when there's nothing to
19  suggest that they are.

20             MR. RATTET:  Your Honor, given Your Honor's thoughts,
21  can we have disclosure of who are the principals of the
22  mortgagor?

23             THE COURT:  That doesn't --

24             MR. RATTET:  Or mortgagee?

25             THE COURT:  No.  What you're entitled to I believe,

but not today, is to look at the underlying documents to see
who controls the decisions on the loan.  Most of the documents
for securitization say that the servers are supposed to act
with regard to the property as it would with regard to its own
property.

MR. RATTET:  I believe that most of the servicing
documents that I have seen of late provide that the servicer
has no power to adjust or modify the mortgage but has the
absolute right to collect first on the proceeds --

THE COURT:  You know what?  Just get the copy of it.
All right?

MR. RATTET:  Right.

THE COURT:  And read it.  Which no one really did
with this stipulation.  I have marked it up to reflect what I
told you all to put in it last time.  I spent an hour, which
someone should have done, particularly since I alerted you and
Ms. Gordon-Oliver that I have done that now with stipulations
from your firm several times.  I don't want to do it again.
Protecting your client and the estate.  Make the changes and
get it entered.

MR. RATTET:  Thank you, Your Honor.

MR. SOUTH:  Thank you, Your Honor.

MR. KHODOROVSKY:  Thank you so much, Your Honor.

THE COURT:  I'll see you all about January 12th.
Unless there some progress in this case, I'm telling you this

1  lender will probably get stay relief.

2          MR. RATTET:  Thank you, Your Honor.

3          MR. KHODOROVSKY:  Thank you, Your Honor, again.

4  Thank you for allowing me to appear telephonically.

5          THE COURT:  I'm not going to go through one of these

6  again and mark it up for your client.

7          MR. KHODOROVSKY:  Thank you so much, Your Honor.

8          MR. RATTET:  Thank you, Your Honor.

9          MR. SOUTH:  Thank you, Your Honor.

10          MR. DEBVUKAJ:  Thank you.

11          MR. KHODOROVSKY:  Have a good holiday, Your Honor.

12          MR. RATTET:  Have a good holiday, Your Honor.

13  (Proceeding ended at 10:26 a.m.)

14                    *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

1    I certify that the foregoing is a court transcript from an
2   electronic sound recording of the proceedings in the above-
3   entitled matter.

4

5                        _____

6                                    Sally Reidy

7   Dated: January 4, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$16.5** [2] 10:21 11:9
**$5,000-a-month** [1] 8:7

## 1

**10%** [1] 8:8
**10:10** [1] 2:1
**10:26** [1] 14:13
**10004** [1] 1:26
**10020-1104** [1] 1:22
**10528** [1] 1:18
**107** [1] 7:17
**108** [1] 7:17
**11** [2] 3:23,25
**1251** [1] 1:21
**12866** [1] 1:30
**12th** [2] 8:18 13:24
**14** [1] 11:3
**18** [2] 5:15 11:24

## 2

**2007** [2] 4:19 8:23
**2007-c1** [2] 1:19 4:19
**2011** [1] 15:5
**211** [1] 1:29
**21st** [1] 1:25
**22nd** [2] 2:17 11:2
**250** [1] 11:3

## 3

**33** [1] 1:25

## 4

**4** [1] 15:5

## 5

**550** [1] 1:17

## A

**a.m** [2] 2:1 14:13
**above** [1] 15:2
**absolute** [1] 13:9
**accept** [1] 11:23
**act** [2] 8:16 13:3
**acting** [4] 9:2,10 12:13,18
**actually** [2] 3:2 7:2
**add** [1] 5:24
**addition** [1] 5:24
**additional** [1] 9:21
**address** [1] 6:7
**addressed** [3] 5:11,23 6:4
**adequate** [2] 1:11 12:16
**adjust** [1] 13:8
**advisors** [1] 3:6
**agent** [3] 5:7 8:25 9:10
**ago** [1] 4:12
**agreed** [3] 6:16,18 8:6
**agreement** [2] 2:20
**alerted** [1] 13:16
**all-cash** [1] 11:4
**allow** [1] 6:19
**allowing** [1] 14:4
**already** [1] 5:4

## americas [1] 1:21

**amount** [4] 3:19 4:24 7:21 8:14
**amounts** [1] 12:4
**anci** [1] 7:11
**ancillary** [1] 3:2
**apartment** [1] 6:3
**apartments** [1] 11:6
**apparently** [1] 12:5
**appear** [1] 14:4
**appearances** [1] 1:14
**appears** [2] 3:19 12:13
**approaches** [1] 10:13
**approve** [1] 1:10
**aside** [2] 4:23 10:14
**attached** [1] 3:1
**avenue** [2] 1:17,21
**aware** [2] 3:6 4:12
**away** [3] 5:8,9 7:2

## B

**bank** [1] 6:15
**bank's** [1] 8:12
**bankruptcy** [10] 1:13 3:11,23 4:5
6:15,17 7:17 12:1,10,10
**based** [1] 5:15
**became** [1] 4:12
**become** [2] 4:16,21
**began** [1] 2:1
**believe** [7] 5:1 9:14 10:21 11:22,
25 12:25 13:6
**better** [1] 8:16
**between** [2] 4:4 9:3,4
**boiler** [1] 6:2
**breach** [1] 3:17
**brought** [1] 11:3
**budget** [14] 2:23 3:1 4:9,10,24 5:1,
13,14 7:10,11,20,23,24 8:6
**budgetary** [1] 3:5
**building** [2] 8:14 12:6
**buildings** [1] 9:13
**burnett** [1] 1:20 4:19
**business** [3] 3:20 6:22 7:18
**buy** [1] 12:11
**buyer** [1] 12:11

## C

**call** [2] 4:13 8:12
**called** [1] 3:6
**calls** [1] 5:9
**case** [2] 12:1 13:25
**cash** [10] 1:10 2:17 4:6,7 10:15,17,
18 11:11,13 12:17
**certain** [1] 3:11
**certainly** [1] 11:1
**certify** [1] 15:1
**cetera** [1] 5:4
**changeover** [1] 11:24
**changes** [1] 13:19
**chapter** [2] 3:23,25
**charade** [1] 8:19
**circumstances** [2] 4:2 12:8
**city** [1] 4:14
**client** [4] 6:6 8:6 13:19 14:6

## clients [1] 2:25

**code** [3] 7:17 12:10,10
**cognizant** [1] 4:16
**cold** [1] 5:5
**collateral** [8] 1:10 2:17 4:6,7,8 11:
11,13 12:17
**collect** [1] 13:9
**collecting** [1] 9:25
**come** [2] 8:17 11:7
**comes** [1] 11:5
**coming** [1] 11:8
**competing** [1] 3:22
**complaint** [2] 5:20,22
**complaints** [2] 4:16 5:25
**concerned** [1] 5:10
**conflicting** [1] 4:3
**connection** [1] 15:21
**contingency** [1] 8:8
**controls** [1] 13:2
**cooperation** [2] 11:25
**copy** [2] 3:21 13:10
**correct** [1] 5:18
**corrected** [1] 2:22
**correctly** [1] 6:24
**counsel** [3] 5:11,12,19
**countless** [1] 12:11
**couple** [1] 7:1
**course** [1] 10:16
**court** [56] 1:27 2:2,5,6,9,13,16,22 3:
4,5,8,11,21,22 4:11,23 5:6,16 6:5,
7,8,8,11 7:3,6,9,15,20,23 8:2,5,10,
22,25 9:4,6,8,12,18 10:2,5,15,17
11:1,10,18,20,22 12:4,23,25 13:10,
13,24 14:5 15:1
**court's** [1] 6:7
**created** [1] 5:15
**current** [2] 6:20 10:13

## D

**dated** [1] 15:5
**days** [2] 4:12,12
**deal** [2] 8:16 12:15
**dealing** [4] 5:1 7:3,4,5
**debtor** [7] 1:7,15 6:21,22 7:18,19
10:7
**debtor's** [2] 8:11 12:7
**debvukaj** [17] 2:14,15,15 6:9,14 7:
13,16,22,25 8:4 10:23,25 11:3,15,
19,21 14:10
**decide** [1] 8:15
**decision** [2] 3:6,18,21
**decisions** [1] 13:2
**describe** [1] 10:20
**development** [1] 4:14
**different** [1] 7:10
**difficulty** [1] 2:25
**diminished** [1] 6:24
**disclosed** [1] 7:12
**disclosure** [1] 12:21
**discrepancy** [1] 5:13
**discussed** [1] 5:6
**district** [2] 3:7,24
**dla** [4] 1:20 2:7 4:20 7:5

## document [1] 6:10

**documents** [3] 13:1,2,7
**doing** [1] 2:19
**done** [2] 13:16,17
**down** [1] 10:9
**draft** [2] 2:22,22
**drain** [1] 1:12
**during** [2] 12:1,5
**duty** [2] 3:17 4:7

## E

**electronic** [2] 1:31 15:2
**ended** [2] 3:25 14:13
**enough** [1] 6:3
**entered** [2] 6:15 13:20
**enterprises** [2] 1:4 2:2
**entertain** [1] 6:25
**entitled** [2] 12:25 15:3
**entity** [3] 9:15,22,22
**especially** [1] 4:5
**esq** [3] 1:15,19,23
**essentially** [2] 7:20,24
**estate** [1] 13:19
**et** [1] 5:4
**even** [1] 5:11
**except** [2] 7:21 8:7
**exists** [1] 5:20
**expenses** [1] 8:2
**explain** [1] 11:7
**extent** [1] 4:21

## F

**facility** [2] 9:12,13
**fact** [2] 4:17 8:23
**facts** [1] 4:1
**failure** [2] 3:17 4:14
**fair** [1] 12:12
**familiar** [1] 4:1
**fast** [1] 8:18
**father** [1] 2:15
**feel** [1] 11:7
**fiduciary** [1] 3:17
**fighting** [1] 11:13
**filed** [2] 3:23 5:20
**filing** [2] 3:25 7:8
**find** [2] 4:9 12:11
**firm** [1] 13:18
**firms** [1] 3:24
**first** [2] 5:12 13:9
**five** [2] 4:12,12
**floor** [1] 1:25
**foregoing** [1] 15:1
**forgetting** [1] 8:23
**fuel** [1] 5:4
**fund** [1] 8:17
**funds** [2] 6:17,18

## G

**ge** [1] 8:22
**gec** [1] 4:18
**gecc** [1] 4:19
**gecmc** [3] 1:19 4:19 8:23
**generating** [1] 6:3

george [2] 1:19 2:7
gets [1] 4:7
given [1] 11:25 12:4,20
gjelosh [1] 2:15
gordon-oliver [5] 1:16 2:12,18,19 13:17
got [1] 2:22
group [1] 3:14
guess [1] 2:23

## H

half [3] 5:17 8:13 12:7
happen [1] 11:18
harrison [1] 1:18
heard [1] 5:19
hearing [2] 5:12 11:2
heat [4] 4:15 5:25 6:2,3
help [1] 11:15
hold [1] 12:16
holder [2] 4:21 9:1
holders [1] 4:4
holiday [2] 14:11,12
honest [1] 9:19
honor [26] 2:4,7,11 5:14,19 6:9 8:9,20 9:7,16,20,23 11:14,15 12:3,20 13:21,22,23 14:2,3,7,8,9,11,12
honor's [1] 12:20
honorable [1] 1:12
hot [1] 4:15
hoti [1] 1:4 2:2,2,12 4:9
hour [1] 13:15
housing [1] 4:13

## I

i.e [1] 10:9
iii [1] 1:19
inadequate [3] 4:10,25 5:4
including [1] 5:2
inconsistency [1] 9:3
indirectly [1] 3:5
indiscernible [1] 10:23
inquiry [5] 3:3,4 8:21,22 10:4
interest [1] 9:24,25,25
interviewed [1] 3:25
investor [1] 11:4
investors [4] 3:14 11:5,8,17
ironically [1] 4:8
irrationally [2] 12:13,18
issue [3] 4:4 7:10,10
issues [2] 3:5 4:7
item [4] 6:21 7:14,15,16
itself [1] 4:11

## J

january [3] 8:18 13:24 15:5
judge [1] 1:13

## K

keep [1] 8:23
khodorovsky [1] 1:23 2:4,5 13:23 14:3,7,11

## L

l&r [3] 5:12 9:22,23

l&r's [1] 9:10
lack [1] 11:25
last [4] 2:16,23 4:12 13:15
late [1] 13:7
leases [1] 12:1
leasing [1] 11:16
least [4] 4:15 5:19 8:21 10:7
leave [2] 3:21 4:23
left [1] 7:14
legitimate [2] 10:8,9
lender [7] 9:11,15 11:23 12:8,8,13 14:1
less [2] 8:13 12:7
lift [1] 5:21
line [1] 6:20
llc [1] 1:20 4:20
llp [2] 1:16,20
loan [2] 9:16 13:2
look [2] 9:6 13:1
lost [1] 3:16
lp [1] 1:4

## M

made [1] 10:12
maintain [2] 4:8,14
maintaining [1] 4:10
maintenance [1] 5:2
mamaroneck [1] 1:17
manage [1] 7:22
managed [1] 6:23
management [7] 2:3 6:16,19,20 7:1,21 12:5
managing [6] 5:7 6:22 7:18 8:11 11:16 12:6
many [1] 11:6
mark [1] 14:6
marked [1] 13:14
market [1] 10:13
matter [1] 15:3
mean [4] 8:6,10,12 10:6
million [3] 10:22 11:3,9
milton [1] 1:29
modify [1] 13:8
moment [1] 4:24
money [1] 8:17
months [5] 5:15 7:1 8:1,7 11:25
morning [5] 2:6,7,9,11 3:1
mortgage [7] 3:13,14 4:4,5,21 9:1 13:8
mortgaged [1] 3:16
mortgagee [3] 8:24 9:11 12:24
mortgages [2] 3:10,11
mortgagor [2] 9:11 12:22
mortgagors [1] 3:13
most [2] 13:2,6
motion [1] 1:10
motions [1] 5:21
moved [1] 4:1
ms [2] 2:18,19 13:17
much [4] 8:4,12 13:23 14:7

## N

nazar [2] 1:23 2:5

need [1] 3:3
negotiate [1] 3:15
nevada [1] 3:7
new [9] 1:18,22,22,26,26,30 3:20 4:14 8:17
news [1] 10:19
normal [1] 10:3
northern [1] 3:7
nothing [2] 12:13,18
november [2] 2:16 11:2

## O

occurred [1] 4:17
offer [5] 10:12,20,21 11:4,8
offers [1] 11:12
office [1] 1:24
okay [9] 2:14,16 3:17 6:5 7:6,9 8:2,5 9:18,24 11:19,21
one [6] 3:24 4:15 5:25 6:3 13:13 14:5
only [4] 3:12 7:1 8:15 9:24
operating [1] 7:18
order [2] 6:12 7:17
other [2] 4:16 9:13
otherwise [1] 8:2
out [6] 2:17 3:22 4:3,11 5:13 7:14
over [2] 8:18 12:17
owed [2] 8:13 12:8
own [2] 12:7 13:4
owned [1] 3:14
owner [1] 9:15
owners [1] 3:13

## P

package [1] 3:12
paid [1] 12:5
papers [4] 5:20,23,24 11:1
part [1] 7:11
particular [1] 5:3
particularly [1] 11:25 12:4 13:16
particulars [1] 10:20
pasternak [2] 1:16 2:12
pay [1] 10:17
paying [2] 4:6 5:3
payroll [2] 5:3,3
perfectly [1] 9:19
permission [1] 6:7
petroleum [1] 5:4
ph [1] 5:12
phone [2] 4:13 5:9
piper [4] 1:20 2:8 4:20 7:5
plan [1] 8:17
please [1] 2:4
plus [1] 8:13
point [8] 2:24 4:11 5:13 8:13,19 9:9 11:10,12
points [1] 3:22 4:3
portion [1] 4:24
possession [1] 7:19
power [2] 12:14 13:8
prepared [2] 6:13,14
preservation [1] 4:13
pretty [2] 8:4,12

previously [1] 6:15
price [3] 10:17,18 12:12
primary [1] 12:9
principal [2] 2:20 4:4
principals [4] 3:13,16 4:9 12:21
prior [1] 7:8
probably [1] 14:1
problem [5] 3:2,10 4:8 6:2 7:12
proceeding [2] 3:3 14:13
proceedings [3] 1:31 2:1 15:2
proceeds [1] 13:9
processing [1] 1:28
produced [1] 1:32
progress [1] 13:25
properties [2] 4:11 7:19
property [20] 3:16 4:6 5:2,16 6:22,24,25 7:22 8:11,12 9:10,12,13 11:5,16 12:6,12 13:4,5
property's [2] 8:14 10:11
proposals [2] 10:8,10
protecting [1] 13:19
protection [2] 1:11 12:17
provide [2] 1:11 13:7
providing [1] 4:10
pulled [1] 3:18
purchased [1] 3:10
pursuant [1] 7:16
put [6] 3:9 6:16,18,18,23 13:15
putting [1] 6:16

## Q

question [1] 11:5

## R

rattet [40] 1:15,16 2:11,12,12,14,19,21,25 3:9 5:1,8 6:12 7:4,7,11 8:6,9,20 9:2,5,20,23 10:3,12,16,18,21,24 11:14 12:3,10,20,24 13:6,12,21 14:2,8,12
re [1] 1:2
re-letting [1] 4:11
read [3] 5:20 11:12 13:13
realized [1] 6:23
really [4] 7:9,9 12:8 13:13
realty [1] 2:2
reason [1] 6:22
rebuffed [1] 10:8
receiver [3] 5:7 6:1,24
recent [3] 6:20 5:24
record [2] 11:22 12:14
recorded [1] 1:31
recording [2] 1:31 15:2
reflect [1] 13:14
reflective [1] 10:10
refusing [1] 3:15
regard [2] 13:4,4
regarding [1] 5:25
reidy [1] 1:27 15:4
relates [1] 3:4
relevant [1] 4:21
relief [1] 14:1
remedied [1] 6:3
removal [2] 5:2,22

renew [1] 10:16
renting [1] 5:16
represents [1] 4:20
request [1] 3:3
requires [2] 11:22,23
respect [3] 10:8,8,10
responsive [1] 5:23
resume [2] 6:21 7:18
reviewed [1] 4:9
revised [1] 7:13
rights [1] 12:16
road [1] 1:29
robert [3] 1:12,15 2:11
running [1] 8:18

**S**

sally [1] 1:27 15:4
same [5] 7:13,20,24 8:3,7
saratoga [1] 1:30
secured [1] 8:13
securitization [1] 13:3
securitized [1] 9:12
see [6] 8:10,18 9:20,23 13:1,24
seems [1] 8:10
seen [1] 13:7
sense [2] 10:6 12:15
september [1] 7:2
servers [1] 13:3
service [4] 1:28,32 3:11 9:25
servicer [9] 3:9 4:20,20 8:24,25 9:
  10,24 10:9 13:7
servicers [1] 4:4
services [1] 4:10
servicing [5] 3:10,12 9:22 10:3 13:
  6
several [1] 13:18
show [1] 6:9
showing [2] 11:4,17
silar [8] 3:6,9,14,15,16,23 4:22,23
similar [1] 8:4
simple [1] 11:13
simply [1] 3:9
since [1] 13:16
snow [2] 5:2,22
someone [1] 13:16
sorry [2] 11:20,23
sound [2] 1:31 15:2
south [15] 1:19 2:7,7,10 5:11,18 6:
  6 9:7,10,14,19,21 10:19 13:22 14:
  9
southern [1] 3:24
speculation [1] 12:17
spent [1] 13:15
springs [1] 1:30
stand [1] 2:23
started [1] 5:5
statements [1] 12:7
states [3] 1:13,24 6:21
stay [3] 5:8,21 14:1
stayed [1] 5:9
still [1] 8:21
stipulation [11] 2:18 6:12,14,20 7:
  1,7,17,23 11:11,13 13:14

stipulations [1] 13:17
street [3] 1:20,25 4:19
sued [1] 3:14
suggest [1] 12:19
suggested [1] 2:17
suggests [1] 12:14
sunday's [1] 3:19
suppose [1] 9:22
supposed [1] 13:3

**T**

telephonic [1] 1:23
telephonically [1] 14:4
terms [1] 7:16
there's [7] 3:22 4:3 8:7,21 9:2 12:
  15,18
therefor [1] 1:11
they've [1] 5:16
thoughts [1] 12:20
today [3] 12:14,15 13:1
together [3] 6:16,18 8:16
took [1] 6:17
transcriber [1] 1:27
transcript [3] 1:10,32 15:1
transcription [1] 1:32
transferee [1] 3:12
true [1] 10:11
trust [1] 9:22
trustee [3] 1:23,24 2:5
trying [1] 11:6
turned [1] 10:14
turning [1] 10:9
twice [1] 8:14
two [2] 9:3 11:8
typewrite [1] 1:28

**U**

u.s [2] 1:23 2:5
under [1] 12:8
underlying [3] 4:1 9:11 13:1
undersecured [1] 4:6
understand [3] 6:19 8:20 11:12
understanding [1] 9:7
unit [2] 4:15 5:25
united [2] 1:13,24
units [1] 11:16
unless [2] 9:2 13:25
up [8] 3:25 8:15,17 11:5,16 12:16
  13:14 14:6
upset [1] 8:11
utilities [1] 5:3

**V**

vacant [1] 11:6
vacuum [1] 5:14
value [4] 6:24 10:11,13,17
variance [1] 8:8
various [2] 5:21 11:5
vested [1] 9:24
victor [2] 2:14

**W**

water [1] 4:15

week [2] 2:23 11:8
whether [4] 4:18 8:15,22 9:21
whitehall [1] 1:25
whole [1] 11:10
will [3] 6:21 7:18 14:1
winter [4] 5:5 7:25 8:1,7
wishes [1] 3:21
withdrew [1] 7:7
within [1] 4:12
word [1] 1:28
work [1] 2:17
worth [2] 8:14 12:7

**Y**

year [1] 5:17
yesterday [1] 3:2
york [8] 1:18,22,22,26,26,30 3:20 4:
  14

**EXHIBIT "E"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                        :        Chapter 11
                                              :
HOTI ENTERPRISES, L.P. and                    :
HOTI REALTY MANAGEMENT CO., INC.,             :        Lead Case No. 10-24129 (RDD)
                                              :
                           Debtors.           :

------------------------------------------------------------x

## ORDER DIRECTING GECMC 2007-C1 BURNETT STREET, LLC
## AND LNR PARTNERS, LLC TO APPEAR FOR ORAL
## EXAMINATION AND TO PRODUCE CERTAIN DOCUMENTS
## TO THE DEBTOR PURSUANT TO FEDERAL RULE OF
## BANKRUPTCYPROCEDURE 2004

Upon the application dated January 5, 2011 (the "Application") of Hoti Enterprises, L.P.

and Hoti Realty Management Co., Inc., the above captioned debtors and debtors-in-possession (the

"Debtor")  by its attorneys Rattet, Pasternak & Gordon-Oliver, LLP., seeking entry of an order (the

"Order") of this Court pursuant to Federal Rule of Bankruptcy Procedure 2004, directing

GECMC 2007-C1 Burnett Street, LLC ("GECMC") and LNR Partners, LLC to (i) appear for

oral examination and (ii) to produce documents, and timely and sufficient notice of the

Application having been provided to all parties required to be served; and it further appearing

that good cause exists therefore; it is hereby

**ORDERED** that the GECMC and LNR appear for oral examination on January ___,

2011 at 11:00 a.m., at the offices of Rattet, Pasternak & Gordon-Oliver, LLP, attorneys for the

Debtor, 550 Mamaroneck Avenue, Suite 510, Harrison, New York 10528 as set forth in the

Debtors' Rule 2004 Subpoena (the "Subpoena") annexed hereto as **Exhibit "A"**; and it is further

**ORDERED,** that GECMC and LNR produce for inspection and turnover any and all

documents set forth in the Subpoena at the offices of Rattet, Pasternak & Gordon-Oliver, LLP,

attorneys for the Debtor, 550 Mamaroneck Avenue, Suite 510, Harrison, New York 10528; and it

is further

**ORDERED,** that service of the Subpoena shall be made by Overnight Courier on LNR

Partners, Inc., 1601 Washington Avenue, Suite 700, Miami Beach, Florida 33139 within seven

(7) days after the entry of this Order, both on its own behalf and on behalf of GECMC, whose

address is listed as "c/o LNR", with a courtesy copy to Vincent J. Roland, Esq., DLA Piper LLP,

1251 Avenue of the Americas, 27th Floor, New York, New York 10020-1104.

Dated: White Plains, New York
      January __, 2011

                              _____
                              HONORABLE ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE