Thomas R. Califano
George B. South III
Vincent J. Roldan
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

*Counsel for GECMC 2007 C-1 Burnett Street, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOTI ENTERPRISES, LP, and | : | Lead Case No. 10-24129 (RDD) |
| HOTI REALTY MANAGEMENT CO., INC. | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

**OBJECTION OF GECMC 2007 C-1 BURNETT STREET, LLC
TO APPLICATION IN SUPPORT OF ORDER SCHEDULING
EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

GECMC 2007 C-1 Burnett Street, LLC, ("GECMC"), the holder of a first mortgage on the sole asset of Hoti Enterprises, LP ( "Hoti" together with Hoti Realty Management Co., Inc., "Hoti Management", the "Debtors"), certain real property in Brooklyn, New York (the "Property"), by and through its counsel DLA Piper LLP (US), hereby files this Objection (the "Objection") to Application in Support of Order Scheduling Examination Pursuant to Bankruptcy Rule 2004 (the "Application"). In support of this Objection, GECMC respectfully represents as follows:

**Preliminary Statement**

The Application should be denied because it serves no purpose other than to harass and cause undue burden to GECMC. GECMC owns claims in excess of $38 million, validly perfected and secured by the Property and related collateral, including cash collateral. GECMC

consented to limited use of its cash collateral pursuant to a cash collateral order (the "Cash Collateral Order") to allow the Debtors time to formulate a plan of reorganization. Since entry of that order, the Debtors have defaulted on their obligations under the Cash Collateral Order by failing (i) to turn over, inter alia, books and records, lease files, and financial information to the receiver for the Property, Barbara S. Odwak (the "Receiver"), (ii) to cause one of its principals, Victor Dedvukaj, to pay to the Receiver the sum of $100,000 to replenish tenant security deposits that were illegally spent by the Debtors or their principals prior to the bankruptcy filing.

The Debtors have not yet proposed a plan of reorganization, a sale of their assets or any type of treatment for GECMC's claims. The Debtors will have a difficult time proposing a confirmable plan because GECMC's loan is vastly undersecured -- the Property has been valued by the Debtors at approximately $14.5 million, and GECMC's claims are in excess of $38 million. There is no realistic prospect for a reorganization in this case without GECMC's consent.

The Application seeks to obscure the fact that the Debtors have defaulted on their obligations under the Cash Collateral Order, have failed to cure such defaults resulting in a termination of the Cash Collateral Order and have no hope or viable prospects to reorganize. Instead, the Debtors are attempting to shift the blame for their failures in these cases to GECMC. The Debtors posit that they must investigate the relationship between GECMC and LNR Partners, LLC ("LNR") in order for them to "avoid the futility in proposing a plan that the economic stakeholder in the Note and Mortgage will never get to consider." The Debtors make this assertion even though they have yet to even propose a plan of reorganization or any form of treatment for GECMC's claims under such a plan. The Application itself is, therefore, an exercise in futility because even if the Debtors are permitted to conduct their "fishing

expedition" investigation, there is no showing that they will ever be able to formulate a viable proposal to GECMC, or a confirmable plan. Tellingly, in the two year period that the Debtors have been involved in foreclosure proceedings with GECMC dating back to February 2009 (and even before that time), the Debtors have never raised any issues regarding the relationship between GECMC and LNR, or LNR's authority to act for and on behalf of GECMC.

As further evidence that the Application is intended to harass GECMC, documents relevant to the Debtors' inquiries are publicly available as they have been recorded. It would appear that the Debtors never attempted to even look for the recorded documents. Instead, they have opted to seek Court intervention in a last ditch effort to avoid a lift of the automatic stay and give the Debtors even more time to delay the inevitable. Nevertheless, to put this matter to rest, the basis of the authority of LNR to act on behalf of GECMC in these cases is described herein, and relevant documentation has been included as exhibits hereto.

## Background

1. On October 12, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

2. GECMC holds a claim against Hoti in excess of $38 million, which is secured by the Property and related collateral including cash collateral. LNR, a Florida limited liability company, as successor to LNR Partners, Inc., a Florida corporation, is the manager of GECMC, has been given a power of attorney to act in GECMC's stead, serves as the special servicer of the loan to Hoti, and has full authority to act on all matters relating to this bankruptcy case.

3. The property is currently being operated by the Receiver in accordance with the Cash Collateral Order.

**Background of Loan Documents**

4. The Property consists of certain real property owned by Hoti and located at 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue (also known collectively as 1865 Burnett Street) Brooklyn, New York. The Property was pledged as collateral to GECMC's predecessor in interest pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated, as of February 15, 2007, in the principal sum of $31,000,000 (the "Mortgage") which secures, among other things, payments due under an Amended, Restated and Consolidated Promissory Note with Enterprises as maker dated as of February 15, 2007, in the principal sum of $31,000,000 (the "Note").

5. The Mortgage assigned to GECMC's predecessor in interest all rents, royalties, issues, profits, bonus money, revenue, income rights and other benefits from the Property from time to time accruing (collectively, the "Rents" and together with the Property the "Collateral"). The Mortgage constitutes a valid, binding, first priority, perfected and enforceable lien and security interest in and to the Collateral, including the Rents and leases.

6. Additionally, Hoti executed and delivered to GECMC's predecessor in interest an Assignment of Leases and Rents, dated as of February 15, 2007 (the "Assignment of Rents").

7. The Mortgage was thereafter assigned to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trustee") by an assignment dated May 8, 2007, and the Assignment of Rents was thereafter assigned to the Trustee by an assignment dated May 8, 2007.

8. In addition, the Note was assigned to the Trustee pursuant to an Allonge on or around May 8, 2007.

9. Prior to the Petition Date, on or around November 1, 2008, the Debtors defaulted on their obligations under the Mortgage, Note and related agreements (the "Loan Documents").

10. On or about February 27, 2009, GECMC commenced an action to foreclose the Mortgage, styled GECMC 2007-C1 Burnett Street, LLC v. Hoti Enters. L.P., et al., (N.Y. Supreme Court, Kings County, Index No. 5006/2009) (the "Foreclosure Action"). The Debtors posed no defenses or counterclaims in the Foreclosure Action.

### Relationship Between LNR and GECMC

11. Prior to the formation of GECMC, the Trustee was the holder of the Note and the Mortgage and LNR acted as the special servicer for the loan (the "Loan").

12. In addition to acting as special servicer of the Loan, pursuant to that certain Limited Power of Attorney dated August 21, 2007 (the "Power of Attorney"), the Trustee appointed LNR Partners, Inc. as its attorney to take all actions, necessary or appropriate, among other things:

- "to service any mortgage, deed of trust or other loans acquired or owned by the Trustee, including, without limitation, the issuance of statements for and the collection of any sums due or otherwise payable under such loans";

- "for the modification, partial release, foreclosure, cancellation or satisfaction of mortgages and deeds of trust and notes relating to such loans";

- "for the sale, conveyance, endorsement or assignment of mortgages and deeds of trust and notes as well as any other instrument relating to such loans,"; and

- "for the exercise of any and all of the foregoing in the context of any case filed under Titles 7, 11 or 13 of the United States Code or any other provision of federal or state law relating to bankruptcy or insolvency, including, without limitation, the filing of proofs of claims, filing of motions to dismiss or for stay of relief [sic], voting on plans, and acting as plan proponent."

A copy of the recorded Power of Attorney is attached hereto as Exhibit A.

13. Prior to the commencement of the Foreclosure Action, the Loan Documents were assigned by the Trustee to GECMC for administrative convenience pursuant to that certain

Assignment of Mortgage, an Allonge and an Assignment of the Assignment of Leases and Rents, each dated February 6, 2009. A copy of each of the foregoing documents is attached hereto, respectively, as Exhibits B, C and D.

14. The Trustee is the sole member of GECMC and LNR is the manager of GECMC. A copy of the recorded Certificate of Formation of GECMC 2007-C1 Burnett Street, LLC, dated January 8, 2009, is attached hereto as Exhibit E.

15. In addition to its rights described above as attorney-in-fact for the Trustee, in its capacity as manager of GECMC, LNR has full and complete authority, power, discretion and rights to manage and control the business, affairs and properties of GECMC, and to make all decisions on GECMC's behalf in connection with the acquisition, ownership, servicing, modifications, enforcement, collection, foreclosure, workout and/or sale or other disposition of any mortgage loan or real property held by GECMC (including the Loan and the Property).

16. There are <u>no</u> participants in the Loan as has been alleged by the Debtors.

### **GECMC's Stay Relief Motion and Section 543 Motion**

17. On October 22, 2010, GECMC filed a motion to excuse the Receiver's compliance with section 543 of the Bankruptcy Code (the "<u>543 Motion</u>"). In connection with and in support of the 543 Motion, GECMC submitted an affidavit of Kerry Cunningham, Esq. (the "<u>Cunningham Affidavit</u>").

18. On November 5, 2010, GECMC filed a motion for relief from the automatic stay (the "<u>Stay Relief Motion</u>"). In connection and in support of the Stay Relief Motion, GECMC submitted a second affidavit of Kerry Cunningham, Esq. (the "<u>2d Cunningham Affidavit</u>").

19. November 17, 2010, the Debtors filed a declaration of Victor Dedvukaj (the Debtors' principal) in opposition to the 543 Motion and Stay Relief Motion.

20. On November 19, 2010, GECMC filed a response to the Debtors' opposition to the 543 Motion and Stay Relief Motion (the "Response"). In connection with and in support of the Response, GECMC submitted the following affidavits: (i) November 19, 2010 Affidavit of Whitney Wheeler (the "Wheeler Affidavit"), and (ii) November 19, 2010 Affidavit of Barbara S. Odwak, as Receiver (the "Odwak Affidavit").

21. The facts and allegations set forth in the 543 Motion, the Cunningham Affidavit, the Stay Relief Motion, the 2d Cunningham Affidavit, the Response, the Wheeler Affidavit and the Odwak Affidavit are hereby incorporated as if fully set forth herein.

**Cash Collateral Order**

22. On November 22, 2010, this Court held a hearing on the 543 Motion and the Stay Relief Motion, during which the parties agreed in principle on the terms of the consensual use of GECMC's cash collateral solely for the first 90 days of these bankruptcy cases and to permit the Receiver to remain in possession and control of the Property.

23. On December 22, 2010, this Court "so ordered" and entered the Cash Collateral Order. Under the Cash Collateral Order, the Debtors' use of cash collateral on a voluntary basis expired on January 10, 2011, unless terminated earlier pursuant to the terms thereof. See Cash Collateral Order ¶ 18.

24. On January 5, 2011, GECMC filed a declaration in support of further relief from the automatic stay due to the occurrence of certain "Termination Events" under the Cash Collateral Order, including the Debtors' defaults under the Cash Collateral Order for failure to (i) turn over books and records, lease files and other financial documents to the Receiver, and (ii) cause its principal to pay the sum of $100,000 to the Receiver to replenish tenant security deposits that were spent by the Debtors or their principals prior to the Petition Date.

25. On January 10, 2011, GECMC filed that certain Affidavit of Receiver, Barbara S. Odwak, Esq. In Further Support Of The Motion Of GECMC 2007 C-1 Burnett Street, LLC, For An Order Granting Relief From The Automatic Stay (the "2d Odwak Affidavit"). The 2d Odwak Affidavit confirms the Debtors' defaults under the Cash Collateral Order. See 2d Odwak Affidavit ¶ 5, 6.

## LEGAL ANALYSIS AND ARGUMENT

### A. Standard for Rule 2004 examinations

26. Although the scope of examination permitted pursuant to Rule 2004 can be likened to a "fishing expedition," see, e.g., In re Fearn, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989), "it is not without limits." In re Matter of Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984).

27. Even where discovery is within the permissible scope of Rule 2004, such discovery is not permitted where the cost and burden to the target is greater than the legitimate benefit to the party requesting discovery. "After determining that [a] Rule 2004 examination is necessary for the protection of the [movant's] legitimate interests, the bankruptcy court must balance the [movant's] interests against the [subject's] interest in avoiding the cost and burden of disclosure." In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992) (citing In re Drexel Burnham Lambert, Inc., 123 B.R. 702, 712 (S.D.N.Y. 1991)); see also In re Texaco. Inc., 79 B.R. 551, 553, (S.D.N.Y. 1987) ("[T]he scope of the examination is not limitless; the examination should not be so broad as to be more disruptive and costly to the [subject] than beneficial to the [movant]."). Similarly, a Rule 2004 examination may not be used "in a fashion which unduly harasses the [examinee] or frivolously wastes the assets of the estate." In re M4 Enterprises, 190

B.R. 471, 475 (Bankr. N.D. Ga. 1995). Rather, a Rule 2004 examination "must be closely confined in scope and limited in duration." Id.

B.  **The Application seeks discovery that is unduly burdensome to GECMC, and of little benefit to the Debtors.**

28. In the present case, the Application seeks to use Rule 2004 to obscure the fact that the Debtors have defaulted on their obligations under the Cash Collateral Order, and have no realistic prospect of reorganizing. The Debtors filed the Application "in order to avoid the futility in proposing a plan that the economic stakeholder in the Note and Mortgage will never get to consider." The Debtors fail to mention, however, that they have yet to propose any plan or GECMC's treatment thereunder. The Application, therefore, serves no purpose other than to harass GECMC.[1]

29. Furthermore, the documents that are responsive to the Debtors' requests are publicly available, as set forth above. They can be obtained without the need for any court intervention.

C.  **The Application seeks discovery that is either moot, overbroad, vague or incomprehensible.**

30. GECMC has demonstrated, with clarity, LNR's express authority to take actions in these bankruptcy cases with respect to the Loan. The information provided herein and attached hereto moot the Debtors' request for the following documents:

- All documents identifying the names and addresses of the participants in the Loan, or alternatively that the special purpose entity that owns the Loan, and its investors or participants. (Request No. 1).

- The Operating Agreement of the Bank. (Request No. 2).

---

[1] The Debtors have never asserted any defenses or counterclaims to LNR's or GECMC's authority to commence the Foreclosure Action. It is inappropriate for the Debtors to use this bankruptcy proceedings to raise defenses that should have been raised in state court.

- Any and all agreements between any member of the GECMC and GECMC and/or LNR. (Request No. 3).

- Any and all documents evidencing transfers of interests among current and/or former participants in the Loan and/or membership interests in the Bank. (Request No. 4).

- Any and all documents showing participation in the Loan. (Request No. 5).

- All agreements between GECMC and LNR, including but not limited to option agreements. (Request No. 6).

- Any agreements between any members of GECMC and GECMC and/or LNR. (Request No. 7).

31. In addition, many of the document requests seek information that is completely unrelated to the Loan, such as agreements and correspondence involving GECMC's sole member (the Trustee) and agreements between GECMC and LNR whether or not those agreements relate to the Loan. To the extent the requests relate to anything other than the Loan, GECMC respectfully submits that the requests are overbroad and seek irrelevant information.

32. Similarly, the following discovery requests are overbroad, vague and/or incomprehensible. On its face, these requests appear to implicate <u>any</u> type of communication by GECMC regarding the Property to <u>anyone</u>, whether or not it relates at all to a financing proposal by the Debtors:

- All Documents Constituting, Reflecting or Concerning Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any communication with or about the Debtors with any entity. (Request No. 8).

- All Documents Constituting, Reflecting or Concerning Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any third party. (Request No. 9).

- Documents Constituting Concerning or Reflecting Communications regarding the Debtors and/or current or former property of the Debtors between and/or among You and any current or former employee of any of the Listed Entities. (Request No. 10).

33. To the extent the Application seeks information relating to the validity or extent of GECMC's security interest in property of the Debtors and/or claims against the Debtors, GECMC objects to the extent that any and all of such documents are either in the possession of the Debtors or are publicly available as they have been recorded.

### Reservation of Rights

34. To the extent this Court grants the Application, GECMC reserves the right to object to specific requests by way of motion for a protective order or otherwise.

### Relief Requested

35. The Application should be denied in its entirety. Alternatively, GECMC respectfully requests the document requests referenced herein be, as applicable, (i) stricken and disallowed, and (ii) limited in scope in matters pertaining only to GECMC's relationship to LNR solely with respect to the Property and the Loan.

WHEREFORE, GECMC seeks entry of an order sustaining its objections and granting such other and further relief as is just and proper.

Dated: January 12, 2011
      New York, New York

**DLA PIPER LLP (US)**

/s/    George B. South III
Thomas R. Califano
George B. South III
Vincent J. Roldan
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:   (212) 835-6000
Fax:   (212) 835-6001

Counsel for GECMC 2007 C-1 Burnett Street, LLC