Thomas R. Califano
George B. South III
Vincent J. Roldan
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:    (212) 335-4500
Fax:    (212) 335-4501

Counsel for GECMC 2007 C-1 Burnett Street, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :        Chapter 11
                                                    :
HOTI ENTERPRISES, LP, and                           :        Lead Case No. 10-24129 (RDD)
HOTI REALTY MANAGEMENT CO., INC.                    :
                                                    :
                                    Debtor.          :
---------------------------------------------------------------x

Hearing Date: April 11, 2011
Hearing Time: 10:00 AM

**MOTION OF GECMC 2007 C-1 BURNETT STREET, LLC
FOR AN ORDER (A) FINDING THE DEBTORS AND VICTOR DEDVUKAJ
IN CONTEMPT OF COURT, (B) COMPELLING COMPLIANCE WITH THE
CASH COLLATERAL ORDER, AND (C) IMPOSING SANCTIONS**

GECMC 2007 C-1 Burnett Street, LLC ("GECMC"), the holder of a first mortgage on

the sole asset of Hoti Enterprises, LP ("Hoti" together with Hoti Realty Management Co., Inc.,

"Hoti Management", the "Debtors"), certain real property in Brooklyn, New York (the

"Property"), by and through its counsel DLA Piper LLP (US), hereby files this motion (the

"Motion") for the entry of an order pursuant to section 105(a) of Title 11 of the United States

Code (the "Bankruptcy Code"), (a) finding the Debtors and Victor Dedvukaj (collectively with

the Debtors, the "Debtor Parties") in contempt of court for failing to comply with that certain

December 22, 2010 Stipulation and Order Consenting to Use of Cash Collateral and Granting

Adequate Protection to GECMC 2007 C-1 Burnett Street, LLC (the "Cash Collateral Order"),

(b) compelling compliance with the Cash Collateral Order, and (c) imposing sanctions against

Mr. Dedvukaj, and respectfully states as follows:

## PRELIMINARY STATEMENT

Prior to the Debtors' bankruptcy filing, the Debtors' principals admittedly took and used for other purposes all of the tenant security deposits relating to the Property, in violation of New York General Obligations Law section 7-103. As a consequence, pursuant to the Cash Collateral Order the Debtor Parties agreed to replenish these deposits. However, the Debtor Parties violated the Cash Collateral Order by failing to replenish these deposits, despite numerous requests by GECMC. As a result, GECMC has filed the instant Motion for an order compelling compliance with the Cash Collateral Order, finding the Debtor Parties in contempt of court, and imposing sanctions.

## BACKGROUND

1. On October 12, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

2. GECMC holds a claim against Hoti in excess of $38 million, which is secured by the Property and related collateral including cash collateral. LNR, a Florida limited liability company, as successor to LNR Partners, Inc., a Florida corporation, is the manager of GECMC, has been given a power of attorney to act in GECMC's stead, serves as the special servicer of the loan to Hoti, and has full authority to act on all matters relating to this bankruptcy case.

3. The property is currently being operated by Barbara S. Odwak, as receiver (the "Receiver").

4. On March 24, 2011, GECMC filed that certain Declaration of Vincent J. Roldan dated March 24, 2011 in support of this Motion (the "Roldan Declaration").

## THE CASH COLLATERAL ORDER

5. On December 22, 2010, this Court "so ordered" and entered the Cash Collateral Order. A copy of the Cash Collateral Order is attached to the Roldan Declaration as Exhibit A.

6.     Pursuant to the Cash Collateral Order, on or before December 22, 2010, Mr. Dedvukaj, the Debtors' principal, was required to deliver the sum of $100,000 to the Receiver in repayment of tenant security deposits (the "<u>Tenant Funds</u>") that were previously and improperly disbursed by the Debtors and/or their principals.  <u>See</u> Cash Collateral Order ¶ 12.  The Cash Collateral Order provides:

> <u>Tenant Security Deposits</u>.  Upon execution of this Stipulation and Order, <u>Victor Dedvukaj shall deliver $100,000, in repayment of tenant security deposits used for other purposes pre-Filing Date by the Debtors and/or their principals, to the Receiver</u> to be held in an interest bearing escrow account and to be used by the Receiver as appropriate to refund security deposits in accordance with applicable New York law regarding tenant security deposits and to reimburse the Receiver for tenant security deposits that were required to be paid from other sources following the appointment of the Receiver.  The Debtors acknowledge and agree that the repayment of such $100,000 reflects the fact that an amount of at least $100,000 previously paid to the Debtors by existing and/or former tenants of the Property in respect of security deposits was used pre-Filing Date by the Debtors and/or their principals and was not previously segregated as was required under applicable state law.  Such $100,000 payment shall not be deemed to be a loan to, or obligation or debt of, either Debtor, postpetition or otherwise, or a capital contribution to either Debtor, and no party shall be entitled to any lien or security interest against or interest in either of the Debtors, their assets or properties in respect thereof.

<u>See</u> Cash Collateral Order para. 12 (emphasis added).  This provision to rectify a violation of state law as well as the order appointing the Receiver (in a pre-petition foreclosure action) was a vital element of GECMC's agreement to permit use of cash collateral pursuant to the Cash Collateral Order.  Notwithstanding such provision, no such payment has been made.  Thus, the Debtor Parties are in violation of the Cash Collateral Order.

7.     On January 5, 2011, GECMC filed a declaration in support of further relief from the automatic stay due to the occurrence of certain "Termination Events" under the Cash Collateral Order including the Debtors' default thereunder for failing to cause Mr. Dedvukaj to

pay the Tenant Funds to the Receiver. A copy of this declaration is attached to the Roldan Declaration as Exhibit B.

8.      On January 10, 2011, GECMC filed that certain Affidavit of Receiver, Barbara S. Odwak, Esq. In Further Support Of The Motion Of GECMC 2007 C-1 Burnett Street, LLC, For An Order Granting Relief From The Automatic Stay (the "Odwak Affidavit"). The Odwak Affidavit confirms the Debtors' defaults under the Cash Collateral Order. See Odwak Affidavit ¶ 5, 6. A copy of this affidavit is attached to the Roldan Declaration as Exhibit C.

9.      Mr. Dedvukaj has consistently testified as to his ability and intent to pay the Tenant Funds, but still has yet to submit payment. For example, on November 17, 2010, Mr. Dedvukaj, under penalty of perjury, submitted a declaration to the Bankruptcy Court that stated as follows:

> The Bank has also alleged that we failed to turn over tenant rent deposes to the Receiver. There are no tenant rent deposit accounts because we never kept segregated tenant rent deposit accounts… However we are fully prepared to set up tenant rent deposit account immediately and have already secured the funds necessary to do so. Annexed hereto as Exhibit 1 is proof of the funds available for deposit into said accounts.

See November 17, 2010 Declaration of Victor Dedvukaj ¶ 47, 50. A copy of this Declaration is attached to the Roldan Declaration as Exhibit D.

10.      In addition, at his deposition on November 18, 2010, Mr. Dedvukaj testified under oath that he has the funds available to pay the Tenant Funds. Mr. Dedvukaj testified as follows:

> Q. How much is it that tenants are owed in security deposits currently?
>
> A. Approximately 100,000. We understand, we put the money up for that. Arlene [Gordon-Oliver, now former counsel to the Debtors] made us aware of what we did with that. We said you know what, we want to put the money up for the tenants' security deposits. We don't want to take anybody's money, especially the tenants that we were with for 32 years.

<u>See</u> Transcript of Victor Dedvukaj's Deposition, at 109:12-109:20. Relevant pages of this transcript are attached to the Roldan Declaration as Exhibit E.

11.     On December 30, 2010, GECMC sent a letter to Arlene Gordon-Oliver, Esq., former counsel to the Debtors, demanding payment of the Tenant Funds. A copy of the December 30, 2010 letter is attached to the Roldan Declaration as Exhibit F. The Debtors and Mr. Dedvukaj failed to respond or comply with this letter.

12.     In court on January 13, 2011, the Debtors' former counsel Bob Rattet, Esq. (with Mr. Dedvukaj standing next to him) told GECMC counsel that Mr. Dedvukaj had the Tenant Funds and indicated that such funds would be sent soon. See Roldan Declaration at 13.

13.     On March 2, 2011, GECMC sent a letter to the Debtor Parties, demanding that they comply with the Cash Collateral Order and remit to the Receiver the Tenant Funds by Monday, March 7, 2011. A copy of this March 2, 2011 letter (without attachments) is attached to the Roldan Declaration as Exhibit G.

14.     The Debtor Parties remain in violation of the Cash Collateral Order because they have not paid the Tenant Funds as of the date of this Motion.

**<u>RELIEF REQUESTED</u>**

15.     In light of the Debtor Parties' failure to comply with the Cash Collateral Order, GECMC moves for an order under Bankruptcy Code section 105(a) of the Bankruptcy Code[1], (a) finding the Debtor Parties to be in contempt of this Court, (b) compelling the Debtor Parties to comply with the Cash Collateral Order, and (c) imposing sanctions against the Debtor Parties in the amount of the costs and fees incurred by GECMC as a result of the willful refusal to

---

[1] Rule 9020 of the Federal Rules of Bankruptcy Procedure provides that contempt proceedings are governed by Rule 9014.

comply with the Cash Collateral Order, and a daily penalty in an amount to be determined by this Court.

## GROUNDS FOR RELIEF

16.     If a debtor violates a cash collateral order, the court has leeway to impose a variety of sanctions, including holding the violator in civil contempt, and awarding attorneys' fees to the moving party.  See e.g., In re Alamo, 239 B.R. 623, 625 (Bankr. M.D. Fla. 1999) ("[U]pon a finding of contempt bankruptcy courts may properly award attorney's fees against a party that violated an injunction."); In re Spanish River Plaza Realty Co., 155 B.R. 249, 253 (Bankr. S.D. Fla. 1993) ("Contempt is an appropriate means of redressing cash collateral violations."); In re Krisle, 54 B.R. 330, 337 (Bankr. S.D. 1985) ("[Attorney for the d]ebtor-in-possession was liable for civil contempt when he disobeyed this Court's order to turn over the cash collateral.").  Civil contempt powers "are expressly granted to the bankruptcy court by 11 U.S.C. § 105 which authorizes the Court to take any action 'necessary or appropriate to enforce court orders. . . .'" Spanish River, 155 B.R. at 250 (citing In re Duggan, 133 B.R. 671 (Bankr. D. Mass. 1991).

17.     In In re Williams, 191 B.R. 497 (Bankr. M.D. Ga. 1996), when the debtors violated the cash collateral order, the court required the debtors to pay a $2500 punitive sanction, and the creditors' attorneys fees incurred in bringing the contempt action.  Id. at 503; see also In re A-1 Specialty Gasolines, Inc., 246 B.R. 445, 450 (Bankr. S.D. Fla. 2000) (awarding compensatory damages against the debtor corporation for civil contempt in violation of a cash collateral order); cf.  Riley v Sciaba (In re Sciaba), 334 B.R. 524, 226 (Baker D Mass. 2005) (imposing a $200 daily sanction as for deponent's failure to comply with subpoena and court order).

18.     In the present case, the Debtor Parties have willfully violated the Cash Collateral Order by failing to pay the Tenant Funds to the Receiver.  As such, GECMC respectfully requests entry of an order (a) finding the Debtor Parties to be in contempt of court, (b) compelling them to comply with the Cash Collateral Order within three (3) days of an order granting the instant Motion, and (c) imposing sanctions.

19.     An award of sanctions against Mr. Dedvukaj is appropriate in light of his willful violation of the Cash Collateral Order.  An appropriate award would, at least, reimburse GECMC for the fees and costs it incurred as a result of Mr. Dedvukaj's breach of the Cash Collateral Order and state law, plus a per diem penalty in an amount to be determined by the Court until the Tenant Funds are remitted to the Receiver.  GECMC has incurred approximately $10,000 in fees as a result of the Debtor Parties' breach of the Cash Collateral Order, which includes the fees associated with correspondence, phone calls, preparation of this Motion and an estimate on fees incurred to attend a hearing with respect thereto.  See Roldan Declaration ¶ 16.  Given that all of the Debtors' cash is pledged to GECMC and under the control of the Receiver, GECMC is not asking for sanctions against the Debtors directly.

20.     Accordingly, GECMC believes that the relief requested in this Motion is both necessary to compel the Debtor Parties' compliance with the Cash Collateral Order and appropriate in light of Debtor Parties' blatant disregard of this Court's order, and the fees and costs incurred by GECMC as a result thereof.

## NOTICE

21.     Notice of this motion has been given to the Debtor Parties and the United States Trustee.  GECMC submits that this notice is good and sufficient, and that no other or further notice is required.

## NO PRIOR REQUEST

22.     No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, GECMC respectfully requests that the Court enter the annexed order (a) finding the Debtor Parties to be in contempt of this Court, (b) compelling compliance with the Cash Collateral Order, (c) imposing sanctions against Mr. Dedvukaj in the amount of $10,000 to reimburse GECMC for the fees and costs incurred by GECMC as a result of his breach of the Cash Collateral Order, plus a per diem penalty in an amount to be determined by the Court, and (d) granting such other and further relief as the Court deems just and proper.

Dated: March 24, 2011
          New York, New York

DLA PIPER LLP (US)

/s/      George B. South III
Thomas R. Califano
George B. South III
Vincent J. Roldan
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 835-6000
Fax:  (212) 835-6001

Counsel for GECMC 2007 C-1 Burnett Street,  LLC