Thomas R. Califano
George B. South III
Vincent J. Roldan
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

*Counsel for GECMC 2007 C-1 Burnett Street, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOTI ENTERPRISES, LP, and | : | Lead Case No. 10-24129 (RDD) |
| HOTI REALTY MANAGEMENT CO., INC. | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

**DECLARATION IN FURTHER SUPPORT OF MOTION OF GECMC
2007 C-1 BURNETT STREET, LLC FOR AN ORDER (A) FINDING THE
DEBTORS AND VICTOR DEDVUKAJ IN CONTEMPT OF COURT, (B)
COMPELLING COMPLIANCE WITH THE CASH COLLATERAL
ORDER AND (C) IMPOSING SANCTIONS**

I, Vincent J. Roldan, declare as follows:

1. I am an associate at DLA Piper LLP (US), counsel for GECMC 2007 C-1 Burnett Street, LLC ("GECMC").

2. I make this declaration in further support of the Motion of GECMC 2007 C-1 Burnett Street, LLC for an Order (a) Finding the Debtors and Victor Dedvukaj in Contempt of Court, (b) compelling compliance with the Cash Collateral Order and (c) imposing sanctions (the "Contempt Motion").

## BACKGROUND

3. On October 12, 2010 (the "Petition Date"), the Debtors[1] filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

4. GECMC holds a claim against Hoti in excess of $38 million, which is secured by the Property and related collateral including cash collateral. LNR, a Florida limited liability company, as successor to LNR Partners, Inc., a Florida corporation, is the manager of GECMC, has been given a power of attorney to act in GECMC's stead, serves as the special servicer of the loan to Hoti, and has full authority to act on all matters relating to this bankruptcy case.

5. The property is currently being operated by Barbara S. Odwak, as receiver (the "Receiver").

## THE CASH COLLATERAL ORDER

6. On December 22, 2010, this Court "so ordered" and entered the Cash Collateral Order. A copy of the Cash Collateral Order is attached hereto as Exhibit A.

7. Pursuant to the Cash Collateral Order, on or before December 22, 2010, Mr. Dedvukaj, the Debtors' principal, was required to deliver the sum of $100,000 to the Receiver in repayment of tenant security deposits (the "Tenant Funds") that were previously spent for other purposes by the Debtors and/or their principals. See Cash Collateral Order ¶ 12. The Cash Collateral Order provides:

> Tenant Security Deposits. Upon execution of this Stipulation and Order, Victor Dedvukaj shall deliver $100,000, in repayment of tenant security deposits used for other purposes pre-Filing Date by the Debtors and/or their principals, to the Receiver to be held in an interest bearing escrow account and to be used by the Receiver as appropriate to refund security deposits in accordance with applicable New York law regarding tenant security deposits and to reimburse the Receiver for tenant security deposits that were required to be paid from other sources following the appointment

---

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Contempt Motion.

> of the Receiver. The Debtors acknowledge and agree that the repayment of such $100,000 reflects the fact that an amount of at least $100,000 previously paid to the Debtors by existing and/or former tenants of the Property in respect of security deposits was used pre-Filing Date by the Debtors and/or their principals and was not previously segregated as was required under applicable state law. Such $100,000 payment shall not be deemed to be a loan to, or obligation or debt of, either Debtor, postpetition or otherwise, or a capital contribution to either Debtor, and no party shall be entitled to any lien or security interest against or interest in either of the Debtors, their assets or properties in respect thereof.

See Cash Collateral Order para. 12 (emphasis added). This provision to rectify a violation of state law as well as the order appointing the Receiver (in a pre-petition foreclosure action) was a vital element of GECMC's agreement to permit use of cash collateral pursuant to the Cash Collateral Order. Notwithstanding such provision, no such payment has been made. Thus, the Debtor Parties are in violation of the Cash Collateral Order.

8. On January 5, 2011, GECMC filed a declaration in support of further relief from the automatic stay due to the occurrence of certain "Termination Events" under the Cash Collateral Order, including the Debtors' defaults thereunder for failure to cause Mr. Dedvukaj to pay the Tenant Funds to the Receiver. A copy of this declaration is attached hereto as Exhibit B.

9. On January 10, 2011, GECMC filed that certain Affidavit of Receiver, Barbara S. Odwak, Esq. In Further Support Of The Motion Of GECMC 2007 C-1 Burnett Street, LLC, For An Order Granting Relief From The Automatic Stay (the "Odwak Affidavit"). The Odwak Affidavit confirms the Debtors' defaults under the Cash Collateral Order. See Odwak Affidavit ¶ 5, 6. A copy of this affidavit is attached hereto as Exhibit C.

10. Mr. Dedvukaj has consistently testified as to his ability and intent to pay the Tenant Funds, but still has yet to submit payment. For example, on November 17, 2010, Mr. Dedvukaj, under penalty of perjury, submitted a declaration to the Bankruptcy Court that stated as follows:

> The Bank has also alleged that we failed to turn over tenant rent deposes to the Receiver. There are no tenant rent deposit accounts because we never kept segregated tenant rent deposit accounts… However we are fully prepared to set up tenant rent deposit account immediately and have already secured the funds necessary to do so. Annexed hereto as Exhibit 1 is proof of the funds available for deposit into said accounts.

See November 17, 2010 Declaration of Victor Dedvukaj ¶ 47, 50. A copy of this Declaration is attached hereto as Exhibit D.

11. In addition, at his deposition on November 18, 2010, Mr. Dedvukaj testified under oath that he has the funds available to pay the Tenant Funds. Mr. Dedvukaj testified as follows:

> Q. How much is it that tenants are owed in security deposits currently?
>
> A. Approximately 100,000. We understand, we put the money up for that. Arlene [Gordon-Oliver, now former counsel to the Debtors] made us aware of what we did with that. We said you know what, we want to put the money up for the tenants' security deposits. We don't want to take anybody's money, especially the tenants that we were with for 32 years.

See Transcript of Victor Dedvukaj's Deposition, at 109:12-109:20. Relevant pages of this transcript are attached hereto as Exhibit E.

12. On December 30, 2010, GECMC sent a letter to Arlene Gordon-Oliver, Esq., former counsel to the Debtors, demanding payment of the Tenant Funds. A copy of the December 30, 2010 letter is attached hereto as Exhibit F. The Debtors and Mr. Dedvukaj failed to respond or comply with this letter.

13. In court on January 13, 2011, the Debtors' former counsel Bob Rattet, Esq. (with Mr. Dedvukaj standing next to him) told me that Mr. Dedvukaj had the Tenant Funds and indicated that such funds would be sent soon.

14. On March 2, 2011, GECMC sent a letter to the Debtor Parties, demanding that they comply with the Cash Collateral Order and remit to the Receiver the Tenant Funds by

Monday, March 7, 2011. A copy of this March 2, 2011 letter is attached hereto as Exhibit G.

15. The Debtor Parties remain in violation of the Cash Collateral Order because they have not paid the Tenant Funds as of the date of the Contempt Motion and this Declaration.

16. GECMC has incurred approximately $10,000 in legal fees in attempting to obtain the Debtor Parties' compliance with the Cash Collateral Order, including correspondence, phone calls, preparation of Contempt Motion, and anticipated attendance at a hearing with respect thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of March, 2011

                                                    /s/ Vincent J. Roldan
                                                    Vincent J. Roldan